Richard ALLGEIER, Plaintiff–Appellee,

Maria D. Boldrick, Intervening
Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 88-5856.

United States Court of Appeals,
Sixth Circuit.

Argued May 18, 1989.

Decided July 20, 1990.

Gregory L. Smith, Woodward, Hobson & Fulton, John V. Hanley, Hanley & Radmacher, Robert J. Bohnert (argued), Louisville, Ky., for plaintiff-appellee.

William C. Travis, Ricketts & Travis, Louisville, Ky., for intervenor-appellee.

Louis DeFalaise, U.S. Atty., Michael Baer, Asst. U.S. Atty. (argued), Office of U.S. Atty., Lexington, Ky., for defendant-appellant.

Before MERRITT, Chief Judge, KRUPANSKY, Circuit Judge, and ENGEL, Senior Circuit Judge.[*]

ENGEL, Senior Circuit Judge.

. We face three principal issues in this appeal of a post-trial judgment awarding damages against the United States on two related claims under the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* First, the government claims that plaintiff Richard Allgeier's amended complaint, which correctly named the United States as the sole defendant but only after the FTCA statute of limitations expired, did not secure federal jurisdiction over his claim by relating back to the original timely but misdirected complaint under Fed.R.Civ.P. 15(c). Second, the government claims that the trial court erred in finding that exceptional circumstances justified allowing intervening plaintiff Maria Boldrick to enter deposition testimony into evidence. Third, the . government contends that the trial court erred in finding a sufficient basis for awarding damages to Boldrick in excess of her initial claim before the administrative agency. We hold that Allgeier's amended complaint did not relate back and thus failed to remedy the jurisdictional defect of his original complaint. We also uphold the two challenged findings regarding Boldrick's suit. Lastly, we reject the United

[*] The Honorable Albert J. Engel became Senior Circuit Judge on October 1, 1989.

States' argument that the district court lacked jurisdiction over Boldrick's claim. We thus reverse Allgeier's judgment against the United States and affirm Boldrick's.

## I.

This case arose out of a March 6, 1984 accident which involved a truck driven by a United States Postal Service carrier and a truck driven by plaintiff-appellee Richard Allgeier. Allgeier alleged that the inattentive mail carrier forced him off a narrow rural road and into a tree. Intervening plaintiff-appellee Maria Boldrick, a passenger in Allgeier's truck, suffered personal injuries in the accident.

Allgeier filed a timely administrative claim with the Postal Service seeking compensation for damage to his truck. The Postal Service mailed a final denial of the claim to Allgeier on January 18, 1985. On July 17, 1985, barely within the six-month limitations period set forth in 28 U.S.C. § 2401(b) for initiation of tort actions against the United States,[1] Allgeier filed a complaint in the district court. The complaint named as defendants the "United States Post Office" and the postal carrier involved in the accident. Allgeier conducted service on the defendants and also on the United States Attorney by certified mail. The United States Attorney's office did not receive a copy of the complaint until July 22, 1985, or four days after the six-

month anniversary of the date on which the denial was mailed.[2]

■ The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee. 28 U.S.C. § 2679(a). Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction. *Vernell by and through Vernell v. United States Postal Service*, 819 F.2d 108, 110 (5th Cir.1987); *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1256 (2d Cir.1975). Realizing his error, Allgeier amended his complaint on September 27, 1985 to name the United States as the sole defendant. Since Allgeier's exclusive remedy was against the United States and since the United States was not named as a party to the suit until well after the six-month limitations period had passed, the district court was without jurisdiction to hear Allgeier's claim unless his amended complaint "related back" to his original timely but flawed complaint under Fed.R.Civ.P. 15(c). In response to the United States' motion to dismiss for lack of jurisdiction, the district court held in an order dated January 23, 1986 that the amended complaint did relate back. In accordance with a subsequent advisory jury verdict, the court entered a final judgment for Allgeier against the United States in the amount of $1,360. On appeal, the United States contests the district court's denial of its motion to dismiss.[3]

1. 28 U.S.C. § 2401(b) provides in full:

    A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

2. As the district court noted, the record is silent as to when the post office and the postal carrier received their process documents. Jan. 23, 1986 Opinion at 1, Jt. App. at 30.

3. An initial question presented by this issue is the effect of appellee Allgeier's failure to file a brief on appeal. While Allgeier did not file a brief, his counsel was present at oral argument and offered to answer any questions the panel might have. Neither the Federal Rules of Appellate Procedure nor our local rules suggest

that an appellee's failure to file a brief should be penalized by a decision in favor of the appellant. Instead, Fed.R.App.P. 31(c) provides in such a case that "the appellee will not be heard at oral argument except by permission of the court." *See, e.g., H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1083 n. 1 (11th Cir.1986). Our court rules do not address this issue. The position apparently taken by at least two other circuits is that they will decide the appeal on the appellant's brief alone when the appellee fails to file a brief. *Instituto Nacional v. Continental Illinois Nat. Bank*, 858 F.2d 1264, 1270–71 (7th Cir. 1988); *United States v. Everett*, 700 F.2d 900, 902–03 n. 5 (3d Cir.1983). While Rule 31(c) also authorizes us to dismiss the appeal where the *appellant* fails to file a brief to support his burden of persuasion, *see id.*, we believe that an appellee's failure to file a brief should normally carry with it only the oral argument sanction called for by the Rule. However, we do not

While our court has interpreted Fed.R. Civ.P. 15(c) in the past, *see, e.g., Marlowe v. Fisher Body,* 489 F.2d 1057, 1064 (6th Cir. 1973); *United States v. Western Casualty & Surety Co.,* 359 F.2d 521, 523–24 (6th Cir.1966), the question presented in this case appears to be one of first impression in our court. Rule 15(c) permits an amendment to relate back to the date of the original complaint only where the claim in the amendment arose out of the same conduct, transaction, or occurrence underlying the original pleading. *Id.* In this case there is no dispute that Allgeier's amended complaint satisfies this requirement.

Rule 15(c) further provides that where an amendment seeks to change the party against whom the claim is asserted, the new party must have had sufficient notice of the institution of the action. *Id.* Rule 15(c) defines sufficient notice as follows:

> [I]f, ... within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the proper party.

The delivery or mailing of process to the United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

Following the practice of several other courts, we will refer to these two paragraphs as the "general notice provision" and the "government notice provision" respectively.

These notice requirements were added to the Rule in 1966. As other courts have noted, the Advisory Committee's Note to the Rule makes clear that the amendment was intended in large part to reverse a trend in which a number of district courts had denied motions to amend complaints when the plaintiff had named the "wrong" federal defendant but had filed the suit and served a responsible government official within the statutory limitation period. *See* Note, 39 F.R.D. 82, 82–83 (1966).

The issue in this case is whether the United States, the proper defendant named in the amendment, had sufficient notice of Allgeier's action. We begin our analysis by considering the language of the government notice provision: "The delivery or mailing of process to the United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of [the general notice provision]...." Read alone and given a common-sense meaning, the language suggests that timely delivery *or* mailing to *any* of these parties would suffice as notice to the United States when it is a proper but as-yet unnamed defendant. Thus, timely mailing to the United States Attorney, as may have been done here, would secure the relation-back privilege.[4] However, this interpretation is undercut by the Advisory Committee Note on the Rule. The Note states that the government notice provision "provide[s] specifically in the government cases that ... the [general notice requirement is] satisfied when the government has been notified in the manner there described (see Rule 4(d)(4) and (5))." 39 F.R.D. at 83. The cited Rule, which governs service of process, provides

---

address the power of the court to impose additional sanctions should it specifically order the filing of a brief and the appellee without adequate reason fails to comply.

Judge Merritt would reverse the award of damages in favor of Allgeier because of his failure to file a brief on appeal.

4. Such is the apparent holding of a brief unpublished district court opinion, *see Dougherty v. United States Postal Service,* 1990 WL 4403 (E.D. Pa., Civ. No. 89–5596, Jan. 19, 1990), which accords with dictum from another district court. *See Winters v. United States Postal Service,* 721 F.Supp. 1388, 1393 n. 6 (D.D.C.1989) (dictum).

that service on the United States is accomplished "by *delivering* [process documents] to the United States attorney ... and by *sending* [process documents] *by registered or certified mail* to the Attorney General. ..." Fed.R.Civ.P. 4(d)(4) (emphasis supplied). Service on a federal officer or agency is accomplished by serving the United States and "by *sending* [process documents] *by registered or certified mail* to such officer or agency." Fed.R.Civ.P. 4(d)(5) (emphasis supplied). Given Rule 4(d)'s specific provision for service on the United States Attorney only by delivery, it would be incongruous to interpret Rule 15(c) to allow *mailing* of process to the same. The Advisory Committee's citation in Rule 15 of clearly parallel Rule 4(d)(4) and (5) convinces us that the committee at least intended the government notice provision to be interpreted consistently with Rule 4.

It might be urged that the Advisory Committee's citation to Rule 4(d) should not trump the common-sense reading of Rule 15(c) that the phrase "delivery or mailing" applies to any of the parties subsequently named in the government notice provision. If this common-sense reading does go beyond the intent of the Committee, the consequences of imprecise drafting should not fall on hapless claimants against the government. Rule 15(c) would reset an "unnecessary trap for the unwary" no different from that which the 1966 Amendment to the Rule was intended to remove. *See* Note, 39 F.R.D. at 82–83; Wright, Miller & Kane, Fed.Prac. & Proc. § 1502 (1990). *Cf. Winters*, 721 F.Supp. at 1392–93 ("Rule 15(c)'s choice of the words 'mailing to' rather than 'receipt by,' does not appear to be accidental or unintentional and this Court reads those words to mean what they say."). However, such considerations are insufficient to override our duty to construe strictly any waiver by the United States of its sovereign immunity. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259

(1979) ("we should not take it upon ourselves to extend the waiver beyond that which Congress intended"). On the basis of this well-established principle, courts have declined to extend the limited waiver period for tort claims in section 2401(b) in interpreting the language of that statute, *see, e.g., Kubrick; Vernell*, 819 F.2d at 111–12, and also in interpreting Rule 15(c). *See, e.g., Hatchell v. United States*, 776 F.2d 244, 246 (9th Cir.1985) (declining to interpret the period for actual notice in Rule 15(c) as extended three days beyond the six-month period by Rule 6(e), because to do so would extend the waiver in section 2401(b)); *Stewart v. United States*, 655 F.2d 741, 742 (7th Cir.1981) (declining to expand the waiver by interpreting the period for actual notice under Rule 15(c) to include a "reasonable time" for service of process after the suit is filed within the six-month period).

■ We therefore hold that where an amendment naming the United States as the proper party seeks to relate back under Rule 15(c), the United States is deemed to have been properly notified where, within the statutory limitation period, there has been either 1) delivery of process to and receipt by the United States Attorney (or proper designee); or 2) mailing of process to the Attorney General. Merely mailing process to the United States Attorney within the statutory period does not suffice. We note that the majority of courts, including two district courts from this circuit, have held, without discussing the language of the government notice provision, that a plaintiff may secure the relation-back privilege only where the United States Attorney has in fact received process within the limitations period. *See Johnson v. United States Postal Service*, 861 F.2d 1475, 1480 (10th Cir.1988), *cert. denied* —— U.S. ——, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989); *Harris v. U.S. Dep't of Transportation*, 843 F.2d 219, 221 (5th Cir.1988); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1389 (9th Cir. 1984);[5] *Stewart*, 655 F.2d at 742; *Carr v.*

---

5. Our citation of *Allen* does not extend to its holding that notice under Rule 15(c) must meet the requirements for full service of process un-

der Rule 4(d)(4) and (5), *i.e.*, a plaintiff must deliver process to the United States Attorney *and* mail process to the Attorney General. *See*

*Veterans Admin.*, 522 F.2d 1355, 1357–58 (5th Cir.1975); *Ridgell v. United States Postal Service*, 678 F.Supp. 167, 169 (E.D. Mich.1987); *Wickfall v. Bolger*, 102 F.R.D. 466, 467 (W.D.Tenn.1984); *Armendariz v. United States Postal Service*, 1987 WL 18920 (N.D.Ill., No. 87–C–2849, October 16, 1987).[6]

■ The district court found in this case that the United States Attorney received process on July 22, 1985, four days after the limitations period had run. Under our interpretation of Rule 15(c), this receipt clearly does not constitute the requisite timely notice to the United States. Neither does receipt of process by the United States Post Office and the individual mail carrier erroneously named as defendants, assuming this receipt was timely, because the government notice provision requires the delivery or mailing of process to the "United States Attorney, or the United States Attorney's designee, or the Attorney General of the United States, or an *agency or officer who would have been a proper defendant if named.*" Fed.R.Civ.P. 15(c) (emphasis added). Even if the government

notice provision does not set out the exclusive ways in which the United States can receive notice of a suit, we agree with the two circuits that have declined to impute the actual knowledge of an agency to the United States under circumstances nearly identical to those in this case. *See Johnson*, 861 F.2d at 1481; *Allen*, 749 F.2d at 1389; *accord Plourde v. United States Postal Service*, 721 F.Supp. 218, 223 (D.Minn.1989); *but see Carr*, 522 F.2d at 1357–58 (implying that delivery of process to a "responsible government official" not named in the government notice provision would alone suffice to impute knowledge to the United States); *contra Murray v. United States Postal Service*, 550 F.Supp. 1211 (D.Mass.1982). Therefore, since the United States did not receive actual notice of Allgeier's lawsuit within the six-month period, the district court erred in holding that Allgeier's second amended complaint related back to and corrected his fatally flawed original complaint under Rule 15(c). The district court thus had no jurisdiction over the suit and should have granted the

---

*Paulk v. Dep't of the Air Force*, 830 F.2d 79, 82 (7th Cir.1987) (the government notice provision requires only notice to the U.S. Attorney *or* the Attorney General, rather than to both); *Vernell*, 819 F.2d at 110 n. 2 (same; declining to follow *Allen* ); *see also Montgomery v. United States Postal Service*, 867 F.2d 900, 903 (5th Cir.1989) ("it is *notice* and not service that Rule 15(c) requires. Notice may be formal or informal.") (citations omitted; emphasis in original). The Ninth Circuit apparently has since limited this aspect of *Allen* to apply only to the *general* notice provision of Rule 15(c), and not to the government notice provision. *See Miles v. Dep't of the Army*, 881 F.2d 777, 781 (9th Cir.1989).

6. However, we do not adopt the reasoning of those cases which rely principally or solely on *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), for this holding. In *Harris*, for example, the Fifth Circuit faced facts similar to those in the present case. The plaintiff had timely filed suit against two federal agencies, but the heads of these agencies were the only proper defendants. Although he had mailed service of process to the United States Attorney within the limitations period, the Attorney did not receive the documents until after the limitations deadline. 843 F.2d at 219–20. (Process was also mailed to the agency defendants, and likewise not received by them until after the deadline.) The Fifth Circuit held that

the plaintiff's subsequent amended complaint naming the proper defendants did not relate back because the United States Attorney had not received the process documents before the deadline. 843 F.2d at 221.

*Harris* made no mention of the government notice provision of Rule 15(c) and instead rests principally upon the Supreme Court's decision in *Schiavone.* In *Schiavone,* the Supreme Court held that under the general notice provision of Rule 15(c), an amended complaint naming the proper defendant does not relate back to a timely but flawed original complaint where the would-be defendant did not receive actual notice of the suit within the statute of limitation period. 477 U.S. at 30–32, 106 S.Ct. at 2384–85.

Since the defendant in *Schiavone* was a private entity, the Supreme Court understandably discussed only the general notice provision of Rule 15(c). Since *Harris* involved a government defendant, however, the government notice provision would seem to apply. Particularly since the government notice provision states that "mailing" may be sufficient, *Harris* appears both to neglect this provision and to overread *Schiavone* by applying its "actual notice" standard wholesale to a case in which the government notice provision is relevant. Thus, the reasoning of *Harris* does not seem to discuss the Rule 15(c) issue fully. The same seems true of *Johnson, Ridgell,* and *Armendariz, supra.*

United States' motion to dismiss Allgeier's suit.

## II.

We now turn to the government's arguments as they pertain to Maria Boldrick and the judgment in her favor. On February 13, 1986, Boldrick filed a timely administrative claim with the Postal Service seeking damages in the amount of $50,000 for her personal injuries. Following a final adverse administrative decision, Boldrick filed a motion to intervene in this action. The district court granted permission and the intervening complaint was filed on April 7, 1986.

A three-day trial before an advisory jury took place on December 3, 9, and 10, 1987. On the first day of the trial, as one of a number of preliminary matters, the United States brought to the district court's attention the fact that Boldrick's attorney intended to use the pretrial deposition testimony of Boldrick's treating physician, rather than to present the witness at trial. Finding that exceptional circumstances existed under Fed.R.Civ.P. 32(a)(3)(E), the court indicated that it would permit the use of the deposition.

In accordance with the subsequent jury verdict, judgment was entered in favor of Boldrick and against the United States in the amount of $104,000.[7] In a post-trial motion to amend the judgment, the United States objected to the damage award to Boldrick as exceeding the $50,000 requested in her administrative claim. In an order dated March 4, 1988, the district court denied the motion.

## A.

■■■ The United States on appeal first challenges the trial court's jurisdiction over Boldrick's claim as well as Allgeier's. The government first notes that if the district court had no jurisdiction over Allgeier's suit, then Boldrick must establish independent jurisdiction over her intervening complaint. The United States argues that she cannot do so because she failed to serve process on the United States when she intervened. The district court rejected this argument below, and so do we. An intervening party need not serve process in the manner provided for original process in Rule 4. *See* 7C Wright, Miller & Kane, *Fed.Prac. & Proc.Civil 2d* § 1919 (1986). It is also well-established that it is "within the court's discretion to adjudicate the claims of [an intervening] party who brings independent subject matter jurisdiction." *Kelly v. Carr,* 691 F.2d 800, 806 (6th Cir. 1980). *Accord Horn v. Eltra Corp.,* 686 F.2d 439, 440 (6th Cir.1982). Thus, we conclude that the court below properly acquired jurisdiction over Boldrick's suit.[8]

## B.

The United States next claims that the district court erred in allowing Boldrick to use the deposition testimony of her treating surgeon, Dr. Carroll Witten, pursuant to Fed.R.Civ.P. 32(a)(3)(E), rather than having the doctor testify at trial. Fed.R.Civ.P. 32 provides in relevant part:

> (a) **Use of Depositions.** At the trial ..., any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: ...
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
> ... (E) upon application and notice, that

---

7. Boldrick was also awarded a judgment against Allgeier in the amount of $26,000. This judgment is not at issue in this appeal.

8. We also note with disapproval the manner in which the United States Attorney raised this issue on appeal. The government's appellate brief noted the issue in a footnote even while admitting that the Solicitor General had not authorized its appeal because it was "too technical." Only in its reply brief did the United States fully brief the claim, ignoring its clear responsibility under the Federal Rules of Appellate Procedure 28(a)(4) to raise the issue properly in its principal brief. Boldrick, of course, thus had no opportunity to respond.

such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Because the decision whether or not to allow the use of a deposition at trial under Fed.R.Civ.P. 32(a)(3)(E) is within the discretion of the trial court, we will not reverse the court's ruling absent clear error or abuse of that discretion. *See Hanson v. Parkside Surgery Center*, 872 F.2d 745, 750 (6th Cir.1989) (applying this standard of review to trial court's discretionary decision to allow expert testimony under Fed. R.Evid. 702), *cert. denied*, —— U.S. ——, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989). Moreover, even if we find that the trial court has abused its discretion, we will find the error to be harmless unless it affected substantial rights of the complaining party.

### 1. *Abuse of Discretion*

■■■■ The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met. *See, e.g., Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir.1987); *Rascon v. Hardiman*, 803 F.2d 269, 277 (7th Cir.1986). The government argues that the district court abused its discretion because Boldrick failed to meet her burden of showing "exceptional circumstances" as contemplated by Rule 32(a)(3)(E).

On the first day of trial, the United States objected to use of the Written deposition "unless and until there has been a showing that the witness is unavailable." 1 Trial Tr. 46. Boldrick's attorney admitted that Dr. Witten had offices both within and outside the district, and that he could subpoena him if necessary. However, the attorney indicated that he hoped it was not. *Id.* The district court ruled that the deposition could be admitted under the exceptional circumstances provision of Rule 32(a)(3)(E).

How exceptional the circumstances must be under Rule 32(a)(3)(E) is indicated by its companion provisions. These authorize use of a deposition in lieu of live testimony only when the witness is shown to be unavailable or unable to testify because he is dead; at a great distance; aged, ill, infirm, or imprisoned; or unprocurable through a subpoena. Rule 32(a)(3)(A)–(D). In this case, the district court appears to have based its finding of "exceptional circumstances" on a conclusion that it was both Kentucky and federal practice to regard doctors as "automatically unavailable." 1 Trial Tr. 47. Our research has uncovered no cases supporting the existence of such a practice in the federal courts, nor has Boldrick directed us to any such cases. Moreover, that such a practice exists in Kentucky [9] alone seems insufficient to constitute "exceptional circumstances" under the federal rule. *See Frechette v. Welch*, 621 F.2d 11, 13–14 (1st Cir.1980) (Rule 32(a)(3) prevails over more lenient state practice). Thus, we conclude that absent more persuasive evidence of unavailability, there was an abuse of discretion in allowing use of the depositions here.

### 2. *Prejudice*

■■■ Although we have found an abuse of discretion in permitting the use of Dr. Witten's deposition, the question of prejudice remains. The United States makes two claims of prejudice to its substantial rights by the use of the Witten depositions. First, the government generally claims that it was denied its full opportunity to cross-examine Dr. Witten. This argument is unpersuasive. The same Assistant United States Attorney who represented the United States at trial had ample opportunity to and did cross-examine Dr. Witten at his deposition. This cross-examination was read to the jury at trial. *Cf. Rascon*, 803 F.2d at 277 (rejecting claim of prejudice from admission of deposition testimony, in part because appellant had opportunity to question witness at time of deposition).

The second claim of prejudice raised by the United States is that Dr. Witten was the only witness who could testify as to what Boldrick and her attorney knew relative to her medical condition at the time she

9. *See* Ky.R.Civ.P. 32.01.

filed her administrative claim, which knowledge was relevant to the issue of excessive damages. This claim of prejudice is likewise unpersuasive. In the first place, Boldrick and her attorney could have been questioned at trial about their knowledge concerning her condition. Further, even had Dr. Witten testified at the trial, it is improbable from the record that either of the parties would have questioned him regarding this issue since prior to the jury findings the issue of excessive damages was first raised by the United States immediately *after* the advisory jury's findings were read. As requested by the United States, the issue was fully briefed in a post-trial motion. Moreover, in that post-trial motion, the United States' only claim of prejudice was that it was denied the opportunity to impeach Dr. Witten by live cross-examination. There is no showing in what particulars Dr. Witten's testimony would in fact have been impeached.

The United States therefore is essentially arguing that it was prejudiced because Boldrick failed to meet her burden of proof on the issue of excessive damages. While this failure is certainly a possible ground for reversal, it apparently resulted not from the use of the deposition testimony, but instead from the oversight of the attorneys in their preparation of this case for trial. Accordingly, we find no prejudice and no grounds for reversal in the district court's admission of the deposition at trial.

## C.

■ The government's final claim against Boldrick's award is that the district court erred in denying the government's post-trial motion to reduce the amount from $104,000 to $50,000, the sum sought in her administrative claim. The motion was based on 28 U.S.C. § 2675(b), which provides:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

The burden is on the claimant to show such intervening facts or newly discovered evidence. *Kielwien v. United States*, 540 F.2d 676, 680 (4th Cir.1976). Findings made by the district court in this regard should not be set aside unless they are clearly erroneous. Fed.R.Civ.P. 52(a).

In its post-judgment motion and again on appeal, the United States has argued that Boldrick has not met her burden of showing the existence of either intervening facts or newly discovered evidence. The district court rejected this argument:

> Proof was presented at trial of this case that Maria Boldrick's injuries were permanent rather than temporary. After her administrative claim was submitted, Maria Boldrick continued to undergo treatment for her injuries and subsequently had surgery on her left knee over one year and one-half after the date of the filing of the administrative claim. The court, in exercise of its discretion, finds that these intervening facts warrant an increase in recovery over the amount of the administrative claim.... Maria Boldrick did not know fully the medical extent of her injuries and expenses at the time of filing the administrative complaint and hence, may recover an amount in excess of the initial administrative claim. Because permanent injuries warrant more damages than temporary ones, and because there is substantial proof of additional treatment, risk, surgery, expense and pain, long after the filing of Maria Boldrick's administrative claim, this court's Judgment permitting recovery in excess of the original was proper.

March 4, 1988 Opinion, Jt. App. at 83–84 (citation omitted). Thus, the district court found that the left knee operation and the additional treatment received after the claim was filed were "intervening facts" sufficient to support an award in excess of the amount sought in the administrative claim. The court also apparently found that such an award was proper because of

878

the existence of newly discovered evidence not reasonably discoverable at the time the claim was filed. That new evidence was apparently the determination that the injuries were permanent.

There is support for the legal position that an additional operation may be considered an intervening fact within the meaning of the statute. *See Molinar v. United States*, 515 F.2d 246 (5th Cir.1975). In that case, the court stated, "[o]ur review of the evidence convinces us that the award of $20,000.00, which is some $18,500.00 above the original claim, is supported by reason of the three knee operations, and the ensuing treatment, performed on appellee [since the original claim was filed].... These were 'intervening facts,' which plaintiff alleged and proved within the meaning of 28 U.S.C. § 2675(b)." 515 F.2d at 249.

■ On the other hand, since *Molinar* was decided, courts have read the term "intervening fact" more strictly to require that it be unexpected or unforeseen. *See, e.g., Low v. United States*, 795 F.2d 466, 470 (5th Cir.1986) (change in plaintiff's prognosis "must not have been reasonably capable of detection at the time the administrative claim was filed"); *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir.1984) (dictum) (change in patient's diagnosis must have been "unexpected"). While it is unnecessary to express any view as to whether other types of changes may also constitute an intervening fact, we believe that the stricter reading of "intervening fact" in these cases is supported by considerations of policy and law. First, the interpretation is consistent with the purpose behind section 2675. As the Fifth Circuit has noted, "[t]he manifest purpose of the sum certain requirements of § 2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability." *Low*, 795 F.2d at 470–71 (citation omitted). Thus, section 2675 should be interpreted so that "[t]he government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settle-

ment decisions." Second, such an interpretation of the statute is consistent with the principle that the Federal Torts Claims Act, as a statute waiving sovereign immunity, must be complied with strictly. *O'Rourke*, 730 F.2d at 856 (citing *Kubrick*, 444 U.S. at 117–18, 100 S.Ct. at 356–57).

■ Applying *Molinar* alone, we have little difficulty in holding that the district court's finding of an intervening fact was not clearly erroneous. Applying subsequent case law and its more restrictive reading of "intervening fact" as requiring an element of unforeseeability, however, presents a closer question. Some of the evidence makes it difficult to say that the operation was entirely unexpected or unforeseen. At the time she filed the administrative claim, Boldrick was aware of the chondromalacia injury to both her knees (that is, roughness on the inside of the kneecaps) and the resulting painful crepitus ("crunching" sensation when moved). The pain appeared to increase and abate from time to time over the course of her treatment by Dr. Witten, which began on March 22, 1984. Approximately one year before she filed her claim, Boldrick had discussed having arthroscopic surgery, and was told by Dr. Witten that both her knees needed the procedure. Boldrick decided to have the surgery done on the right knee because it was "the worse," and the operation was performed on April 2, 1985.

Yet other evidence indicates that the operation *was* unforeseeable. Shortly before the claim was filed, it appears that Boldrick's condition had improved and that the additional surgery was no longer contemplated. Dr. Witten testified that during an examination on January 16, 1986, just six weeks before Boldrick filed her claim, Boldrick told him that both knees were feeling much better. At that examination, Dr. Witten was unable to find any crepitus in the left knee, although Boldrick told him that she could feel it when she moved the knee. Perhaps more importantly, Dr. Witten told her during that visit to "see [him] if she had any problems in the future." Boldrick may have been led thereby to be-

lieve that her injuries were, to some extent, cured.

They were not. Boldrick's condition seems to have deteriorated significantly over the next year and a half. At her next examination on June 26, 1986, some months after the administrative claim had been filed and denied, she complained of intermittent pain in her left knee. Because of the chondromalacia and other problems suffered by Boldrick, Dr. Witten suggested that if her condition did not improve, they should consider sending her to a specialist in arthritic diseases. Boldrick was not examined again until September 3, 1987, the delay apparently due to Boldrick's embarrassment because she had not paid some of her outstanding medical bills. At that examination, Boldrick's left knee showed crepitus throughout its range of motion. She and Dr. Witten discussed surgery similar to that done on the right knee and on September 10, 1987, he performed the operation. Follow-up examinations took place on September 14, September 24, and October 8, 1987. It was not until the last visit that the condition of Boldrick's knee had improved.

In sum, based on this conflicting evidence, it seems that because of the relative improvement in Boldrick's condition immediately before the administrative claim was filed and the significant worsening of her condition well over a year later, the need for the second operation and extensive additional treatment were not reasonably foreseeable at the time the administrative claim was filed. Our decision in this regard is also fortified, although not controlled, by the absence of any evidence of bad faith or manipulation intended to bypass the notice requirements of the statute. We therefore hold that the district court's findings and award exceeding her administrative claim were not clearly erroneous and hence did not offend the provisions of 28 U.S.C. § 2675(b).

## III.

In accordance with the above holdings, we REVERSE Allgeier's judgment against the United States and REMAND his case to be dismissed for want of jurisdiction. Boldrick's judgment and award are AFFIRMED.