Denise and Ivan RUBEL, Plaintiffs,

v.

ELI LILLY AND COMPANY, Defendant.

Denise and Ivan RUBEL, Plaintiffs,

v.

KALIPHARMA, INC., Defendant.

Nos. 86 Civ. 3834 (LAK),
87 Civ. 5044 (LAK).

United States District Court,
S.D. New York.

March 3, 1995.

Paul H. Blaustein, Hopgood, Calimafde, Kalik, Blaustein & Judlowe, New York City, for plaintiffs.

Samuel J. Abate, Jr., Beatie King & Abate, New York City, for defendant.

## MEMORANDUM AND ORDER

KAPLAN, District Judge.

This is a product liability case arising out of injury allegedly sustained by Denise Rubel as a result of her mother's use during her pregnancy of diethylstilbesterol. The case is scheduled for trial on March 9, 1995. The matter is before the Court on plaintiffs' application, dated March 1, 1995 and made pursuant to FED.R.CIV.P. 32(a)(3)(E), for leave to read in evidence the 1988–89 deposition testimony of Dr. Lawrence Jackman, who treated Mrs. Rubel from May 1976 through September 1980, despite the fact that Dr. Jackman practices in this District and is within one hundred miles of the courthouse.

Although Dr. Jackman was deposed in this case, he was expected by all parties to testify in person at the trial. The current application is based on an affidavit of Dr. Jackman, who states that he practices in a group of four physicians, that he currently is handling the entire practice alone, and that he therefore cannot leave his practice to testify in court. Within the last two weeks, one of his three colleagues retired for physical reasons and a second left on maternity leave. The third was hospitalized on February 14, 1995 with an as-yet undiagnosed illness.

Defendant Eli Lilly and Co. opposes the application. It contends that it conducted a discovery deposition of Dr. Jackman in view of his presence in the District and his amenability to process. It maintains that the effect of permitting use of the deposition therefore would be to deprive it of any effective cross-examination. It suggests also that Dr. Jackman's claimed unavailability is more a product of plaintiffs' desire to avoid subjecting him to cross-examination than of the demands of his practice.

Rule 32(a)(3) provides in relevant part that a deposition may be used at trial for any purpose:

"(E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

There is a handful of reported decisions dealing with the question whether the heavy demands on physicians' schedules constitute "exceptional circumstances" justifying use of their depositions. In *Allgeier v. United States,* 909 F.2d 869, 876 (6th Cir.1990), the court held that a district court abused its discretion in permitting use of a physician's deposition on the theory that the presumed unavailability of physicians constituted exceptional circumstances. In *Reber v. General Motors Corp.,* 669 F.Supp. 717, 720–21 (E.D.Pa.1987), a district court permitted use of the deposition of a physician unable to attend at trial due to a heavy surgical schedule, but did so principally on the basis that the deposition had been videotaped with the expectation on both sides that the video would be used at trial. And in *Borchardt v. United States,* 133 F.R.D. 547 (E.D.Wis. 1991), the court permitted use of a physician's deposition where the cost of having the doctor testify live was $625 to $875 more than the cost of presenting the evidence via deposition and the claim was only $12,402.

Against this background, we accept that Dr. Jackman's circumstances are "exceptional" within the intendment of the Rule. Unlike *Allgeier,* there is no claim here that physicians in substance are presumed to be unavailable; there is a showing of specific and unusual circumstances making the doctor's appearance more difficult than usual. But that alone is not enough in view of Lilly's claim of prejudice.

Litigants who conduct discovery, as opposed to trial, depositions typically do not

**30**

attempt to undermine the testimony of the witness. They prefer instead to commit the witness to a version of the facts, develop leads for cross-examination, and save any impeachment material for trial. Hence, we readily acknowledge that Lilly's claim of prejudice is not without force. But it does not necessarily carry the day. Parties who so conduct depositions always run the risk that a deposition will be rendered usable as of right by the death or absence of the witness when the trial eventually takes place. This of course reflects a judgment by the drafters of the Rules. Given a choice between (a) loss of all testimony by the witness as a result of untimely demise or absence, and (b) use of testimony adduced for a purpose other than the presentation of evidence at trial, the drafters opted for the latter despite the fact that there often will be some prejudice to one side or the other.

In the circumstances at bar, we do not face the stark choice that faced the drafters. While we accept that Dr. Jackman is unavailable to come into New York City and testify at trial, necessarily during normal business hours, we do not accept that he cannot make any time available with respect to this case. In consequence, we see insufficient reason to deprive Lilly of its right to cross-examine Dr. Jackman. Accordingly, we deny plaintiffs' motion pursuant to Rule 32(a)(3)(E). Plaintiffs, however, are granted leave to take Dr. Jackman's deposition in White Plains after regular business hours or on a weekend, with the deposition to be recorded on videotape if any party so desires. Plaintiffs must make their election whether to conduct such a deposition by the close of business on March 7, 1995. If plaintiffs elect to conduct a deposition of Dr. Jackman, they will seek to agree upon the timing of the deposition with defendants and, in default of agreement, give defendants at least three days' notice. The deposition shall be completed no later than March 15, 1995 unless otherwise agreed by the parties in writing or ordered by the Court.

SO ORDERED.