**DMC–MEMPHIS, INC., d/b/a Delta Medical Center Plaintiff–Appellant,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY; Tommy G. Thompson, Secretary of the United States Department of Health and Human Services, Defendants–Appellees.**

No. 03–5272.

United States Court of Appeals, Sixth Circuit.

June 29, 2004.

Before COLE and COOK, Circuit Judges; and SPIEGEL, District Judge.*

## OPINION

COLE, Circuit Judge.

Plaintiff seeks to reinstate a suit alleging harm from the tort of being paid too much money. Although many would gladly fall victim to such a wrong, Plaintiff–Appellant DMC Memphis, Inc. ("DMC") thinks otherwise. After the Department of Health and Human Services ("HHS")—through its intermediary, Mutual of Omaha Insurance Co. ("Mutual")—overpaid DMC $1.8 million for medical care that it provided under the Medicare program, DMC was defrauded into turning the money over to its prior owner, New American. By the time HHS asked for its money back, New American had gone bankrupt, and DMC was left holding the bag. DMC then sued Mutual and HHS under the Federal Tort Claims Act, 28 U.S.C. § 1346, asserting that the overpayment resulted from Mutual's negligence and caused DMC's fiscal predicament. The district court held that it lacked subject matter jurisdiction to adjudicate the suit, and we AFFIRM.

## I. BACKGROUND

The facts, as alleged by DMC, are as follows. DMC provides medical care through the federal Medicare program, established and regulated by the Medicare Act, 42 U.S.C. § 1395. The program is administered by HHS, which hires private contractors to process and pay the providers' claims. Mutual was the company responsible for keeping track of DMC's claims for reimbursement. Although the process for billing and reimbursement is

* The Honorable S. Arthur Spiegel, United States District Court, Southern District of Ohio, sitting by designation.

complicated, for the purpose of this appeal we need explain only that DMC prepared a cost report for 1997 that inadvertently overstated the amount it was owed by $1.8 million. When Mutual subsequently audited this report (as required by the Medicare Act), it erroneously relied on DMC's estimates, rather than the accurate data by then available.

At the time, DMC was still owned by New American. In August 1999, New American told Mutual that it had used the wrong data, and Mutual told New American that the problem would be fixed. On August 31, 1999, New American sold DMC to its current owners. On September 9, 1999, Mutual prepared a 1997 Final Settlement (the final accounting of the money owed)—still based on the inaccurate estimated data that had been flagged by New American—that showed an additional $1.8 million owed to DMC. When DMC received the money in late September, it notified New American, who knew but fraudulently failed to tell DMC that the money was an overpayment. Instead, New American told DMC to send it the money, and DMC obliged.

In November 1999, New American told Mutual about the mistaken audit, knowing that under the Medicare Act's regulations—which do not concern themselves with providers' changes in ownership—Mutual would seek reimbursement from DMC. In April 2000, New American filed for bankruptcy, and despite knowing that it had received $1.8 million in erroneous reimbursements that DMC would have to answer for, New American listed neither Mutual, HHS, or DMC as creditors. In March 2001, Mutual finally caught on to its mistake, and asked DMC for its $1.8 million back. DMC requested that HHS excuse it from its repayment obligations, and in the alternative, that it offer a more favorable repayment plan. In November 2001, HHS agreed that DMC could repay the money over sixty months, along with interest to the tune of 14.125%. In February 2002, DMC filed an FTCA suit against Mutual and HHS, seeking compensatory damages of $2 million, along with fees and costs. On December 10, 2002, the district court dismissed the suit for lack of subject matter jurisdiction.

## II. ANALYSIS

■ HHS argues, and the district court agreed, that we lack subject matter jurisdiction over DMC's suit because the Medicare Act precludes this type of claim from being brought under the FTCA. The Medicare Act establishes an administrative process, which for claims over $10,000, allows providers to appeal to the Provider Reimbursement Review Board ("the Board") within 180 days of the intermediary's final determination. See 42 U.S.C. § 1395oo(a). To ensure that providers will resort to this administrative process, the Medicare Act, in 42 U.S.C. § 1395ii, incorporates by reference 42 U.S.C. § 405(h), which provides that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 [federal question jurisdiction] or 1346 [federal defendant jurisdiction] of Title 28 to recover on any claim arising under this subchapter." At bottom, DMC argues that Mutual's negligence should excuse DMC from its statutory obligations under the Act to reimburse HHS for money that it overpaid.

At first glance, this claim seems unambiguously to arise under the Medicare Act. Yet DMC attempts to restyle this claim— as one for consequential damages for the amount that it concededly owes HHS. Whatever the formal difference in phrasing, in substance DMC's claim is still one for an exemption from the Medicare Act's reimbursement requirements. There is no meaningful difference between claiming

that "I shouldn't have to pay the money that I owe you," and claiming that "I will pay you the money that I owe you, so long as you pay me consequential damages to cover the amount that I paid you."

DMC argues, however, that its claims do not arise under the Medicare Act because it accepts HHS's ultimate cost determination—that is, DMC acknowledges that the $1.8 million it received was an overpayment to which it was not entitled. Instead, it posits that Mutual's negligence in making that overpayment should let DMC off the hook for the repayment. But "arising under" means more than just challenges to the intermediary's monetary calculations. In the leading case on this matter, *Heckler v. Ringer*, 466 U.S. 602, 614, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Supreme Court defined "arising under" to cover claims that are "inextricably intertwined" with actual claims for payments. Although the plaintiffs in *Ringer* challenged the legality of underlying Medicare Act regulations, rather than the application of those requirements to their claims, the Court held that they must channel their claims through the Medicare Act's administrative processes. Similarly, although DMC does not quibble with Mutual's math, its action still falls within the Medicare Act: DMC argues that the manner in which Mutual calculated its reimbursement was negligent, and as a result DMC seeks an exemption from otherwise applicable Medicare Act obligations. In short, both the basis for relief and the relief itself revolve around the Medicare Act.

In any event, DMC contends that because the administrative remedies provided for by the Medicare Act provide for no exemptions from the normal reimbursement requirements, to interpret its claim as "arising under" the Medicare Act would deprive DMC of any and all review of HHS's decision. But the Medicare Act provides that the Board's processes are open to any provider that "is dissatisfied with a final determination of the organization serving as its fiscal intermediary . . . as to the amount of total program reimbursement due the provider." 42 U.S.C. § 1395oo(a)(1)(A)(i). DMC contends that this provision limits its administrative appeal to disputes about the accuracy of the intermediary's calculations, but the language is notably broader than that: the provider may appeal when it is "dissatisfied" with such determinations. This language plainly provides for the sort of argument DMC is making—that although the calculation is technically correct, other circumstances compel a different result.

Of course, the Board might have also determined that Mutual did not act negligently, or that even if it did, DMC must still fulfill its obligation to repay HHS. That the Medicare Act may not ultimately have provided DMC with a remedy (even assuming that Mutual acted negligently) does not mean, however, that DMC's claims do not arise under the Medicare Act—it may simply be the case that the Medicare Act has chosen not to remedy every possible wrong. Indeed in *Livingston Care Center, Inc. v. United States*, 934 F.2d 719, 720–22 (6th Cir.1991), we held that a provider's claims for consequential damages arising from HHS's negligence arose under the Medicare Act, even though there was no dispute that the challenged HHS decision had violated the Medicare Act and even though the Medicare Act did not provide for consequential damages. *See also Schweiker v. Chilicky*, 487 U.S. 412, 424, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (same for claim for emotional distress arising from violation of Medicare Act, even though the Medicare Act did not provide for such a remedy); *Bodimetric Health Services v. Aetna Life & Casualty*, 903 F.2d 480, 487 n. 5 (7th Cir.1990) ("[T]he administrative process

outlined by the [Medicare Act] may not afford [the plaintiff] all the relief it seeks pursuant to its state law claims. But Congress, through its establishment of a limited review process, has provided the remedies it deems necessary to effectuate the Medicare claims process."). And because the Medicare Act allows a provider to seek judicial review of the Board's decision, 42 U.S.C. § 1395oo(f)(1), to the extent that the absence of a given remedy conflicted with, say, the Due Process Clause, DMC would have had additional redress.

■ Thus, because DMC's claim arises under the Medicare Act, the district court correctly dismissed the FTCA suit for lack of subject matter jurisdiction. We would be remiss, however, if we did not comment on one other aspect of this suit. In its complaint, DMC named as defendants Mutual and HHS, rather than the United States. Yet in *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir.1990), a case in which we dismissed an FTCA suit brought against the United States Postal Service, we held that "[t]he FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee. Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction." Although Mutual's status as a private intermediary may have introduced some confusion into the pleading process, *Allgeier* made it more than clear that HHS could not be named in lieu of the United States.

### III. CONCLUSION

For the preceding reasons, the judgment of the district court is AFFIRMED.