Nicholas J. ANGELO, and Rayma L. Angelo, Plaintiffs–Appellants,

v.

ARMSTRONG WORLD INDUSTRIES, INC.; GAF Corporation; the Keene Corporation; Owens–Illinois, Inc.; Owens–Corning Fiberglas Corporation; Flexitallic Gasket Company, Inc.; John Crane; Houdaille, Inc., and Anchor Packing Company, Defendants–Appellees.

No. 92–5104.

United States Court of Appeals, Tenth Circuit.

Nov. 29, 1993.

Mark H. Iola (David L. Weatherford and Randall L. Iola with him on the briefs), Un-

german & Iola, Tulsa, OK, for plaintiffs-appellants.

Margaret M. Chaplinsky, Brown, Winick, Graves, Donnelly, Baskerville and Schoenebaum, Des Moines, IA, and Frances E. Patton, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, OK (Scott M. Rhodes with them on the briefs), for defendants-appellees.

Before SEYMOUR, MOORE and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs/appellants Nicholas J. Angelo and Rayma L. Angelo appeal from a final order denying their motion for a new trial entered by the United States District Court for the Northern District of Oklahoma in their strict products liability and negligence lawsuit.[1] Appellants' App. at 84. The Angelos alleged in their complaint that Nicholas Angelo, a seventy-four-year-old maintenance supervisor and machinist, was exposed to products containing asbestos on the job sites where he worked. They complained that the appellees negligently produced, sold, or otherwise placed the asbestos-containing products into the stream of commerce. They also alleged that the appellees were strictly liable because the products were unreasonably dangerous to those exposed to them, and because the appellees failed to warn of the health hazards associated with the products. Id. at 5–7; Appellants' Br. at 3.

The Angelos further complained that as a result of Nicholas Angelo's exposure to the asbestos in the products, he contracted pleural malignant mesothelioma. They also claimed that Rayma Angelo lost Nicholas Angelo's consortium because of his illness.

The Angelos' case was subject to special trial management protocols in effect for asbestos personal injury cases brought in the Northern District of Oklahoma. One of these protocols, contained in the district court's Revised Standing Order of June 16, 1989, required that all parties exchange with their opponents a "medical narrative" summarizing the medical conclusions of expert witnesses. Trial testimony would be limited to the contents of the medical narratives. Appellants' App. at 285, 287–88. The district court also ordered that asbestos personal injury trials be tried in a reverse bifurcated format—that is, damages, causation, and presence of disease would be tried in a first phase, then liability and punitive damages would be tried in a second phase. Id. at 302–03.

A jury found for the appellees in phase one, and the district court entered an order and judgment in their favor. Id. at 81. The district court denied the Angelos' subsequent motion for a new trial, from which the Angelos timely appealed. Id. at 82–84.

On appeal the Angelos contend that: (1) the district court erroneously admitted testimony about Quinidine-induced lupus on redirect examination of appellees' expert witness Dr. Dala Jarolim; (2) a new trial is required because the appellees' counsel was guilty of misconduct by intentionally withholding Dr. Jarolim's testimony about Quinidine-induced lupus until redirect examination; (3) excluding the deposition testimony of one of the Angelos' expert witnesses, Dr. Steven Gawey, was improper and extremely prejudicial; (4) the district court abused its discretion by using the reverse bifurcation format because this format was highly prejudicial to the Angelos and the issues of liability and damages were inseparable; and (5) the district court abused its discretion by failing to reverse the jury's verdict because the jury instructions were erroneous and prejudicial.

We affirm.

## I. Dr. Jarolim's Testimony

The trial was governed by a standing order that provided: "No medical expert shall be allowed to testify unless a narrative report has been previously provided pursuant to the requirements of this order. No medical expert shall be permitted to testify on direct examination as to matters not con-

---

1. The Angelos' complaint alleged strict products liability, negligence, breach of implied warranty, and civil conspiracy. Appellants' App. at 3–14.

tained in his or her narrative report. . . . No witness shall be permitted to testify to matters beyond the scope of the medical narrative report, detailed summary, and/or designated deposition testimony." *Id.* at 288.

Before trial, Dr. Dala Jarolim, an expert witness for appellees, properly prepared a medical narrative report. Subsequently, in a deposition conducted by the Angelos, Dr. Jarolim expressed her opinion that Nicholas Angelo suffered from Procan-induced lupus. She had not mentioned this opinion in her medical narrative report. In a pretrial conference where concerns about changes in opinions were discussed, the supervising magistrate judge stated:

> At this point in time there is certainly no surprise as to what these doctors are going to say and I would certainly think that none of these doctors at this point are going to change any of their opinions again prior to trial. In fact, I can guarantee none of them are going to change any of their opinions, subsequent to this pretrial conference.

*Id.* at 72.

At trial, Dr. Jarolim testified on direct examination that she believed that Nicholas Angelo was "suffering from a form of drug-induced lupus . . . from the administration of one of his heart medicines . . . , Procainamide, Procan S.R." *Id.* at 146. On cross-examination the Angelos' attorney challenged this opinion by questioning why Nicholas's health had not improved more quickly and significantly when he stopped taking Procan. On redirect examination, Dr. Jarolim testified that when Nicholas Angelo was taken off Procan, he began taking a different drug, Quinidine, which has a lupus-like association similar to that of Procan. *Id.* at 179–80. At this point the Angelos objected that Dr. Jarolim's testimony was "beyond the scope." *Id.* The district court overruled the objection.

The Angelos argue that the district court erred by overruling their objection to Dr. Jarolim's testimony about Quinidine-induced lupus. They claim that her testimony surprised them and "gutted" their case.

■■ We review evidentiary challenges differently depending on whether the challenge was properly raised by objection at trial. We will uphold the district court's evidentiary rulings over objections properly made at trial unless the court abused its discretion, *McEwen v. City of Norman*, 926 F.2d 1539, 1544 (10th Cir.1991), and caused "manifest injustice to the parties." *Comcoa, Inc. v. NEC Tels., Inc.*, 931 F.2d 655, 663 (10th Cir.1991); *accord Mason v. Texaco, Inc.*, 948 F.2d 1546, 1555 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). On the other hand, we will uphold the district court's rulings against objections not made at trial absent plain error. Fed.R.Evid. 103(d); *McEwen,* 926 F.2d at 1545. Furthermore, "a specific overruled objection protects the record to the extent of the ground specified, but does not avail the party of other grounds that could have been raised but were not." *Smith v. Atlantic Richfield Co.*, 814 F.2d 1481, 1486 (10th Cir.1987). We therefore must first determine what grounds were raised by the Angelos' objection.

■ Objecting that testimony on redirect examination was "beyond the scope" would typically mean that the testimony addressed issues not raised in cross-examination. *See, e.g., United States v. Hodges,* 480 F.2d 229, 233 (10th Cir.1973) (explaining that redirect examination may cover areas which were the subject of cross-examination). We disagree that the Angelos' objection meant that the testimony violated the trial protocols and the magistrate judge's statement. Even if the Angelos' attorney meant to make such an objection, he did not explain the objection any further to make it clear that he meant something other than what the judge would reasonably take it to mean.[2] Nor does the record indicate that the district court understood the objection to have such an uncommon meaning. The objecting party must make its objection clear; the trial judge need

---

2. The Angelos suggested at oral argument that they had no opportunity to further explain or object. Failure to object would not prejudice the Angelos if they genuinely had no opportunity to object. Fed.R.Civ.P. 46. However, the Angelos have not pursued this argument any further and have not shown that Rule 46 applies.

not imagine all the possible grounds for an objection. *Cf. United States v. Willie,* 941 F.2d 1384, 1394 (10th Cir.1991) (explaining that where there are both permissible and impermissible purposes for evidence, the trial judge need not "seek after the purpose of the evidence or ... imagine some admissible purpose for it"), *cert. denied,* — U.S. —, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992); *Comcoa, Inc.,* 931 F.2d at 660 (requiring the grounds for objections to jury instructions to be obvious, plain, or unmistakable). We therefore review for abuse of discretion only the ruling that the trial judge apparently made: that Dr. Jarolim's testimony did not exceed the scope of cross-examination. Because the Angelos' objection did not specify that the testimony violated the standing order or the magistrate judge's statement, we review for plain error the district court's failure to exclude the testimony on those grounds.

■ We conclude that the trial judge did not abuse his discretion by ruling that the testimony was within the scope of the cross-examination. *See Hodges,* 480 F.2d at 233 ("The scope of redirect examination is committed to the sound discretion of the trial court, and will be reversed only on a showing of abuse of that discretion."). During direct examination, Dr. Jarolim gave her opinion that Nicholas's symptoms were caused by Procan-induced lupus. Appellants' App. at 145. On cross-examination, the Angelos' attorney tried to discredit this opinion by questioning why Nicholas had not improved more quickly and significantly after he stopped taking Procan. *Id.* at 162–64, 178. Dr. Jarolim's challenged testimony on redirect examination was in response to this questioning. She simply explained that Nicholas may not have improved more after he stopped taking Procan because he immediately began taking Quinidine, which may cause similar lupus-like symptoms. *Id.* at 179. The testimony therefore was clearly within the scope of the cross-examination. *Cf. United States v. Wales,* 977 F.2d 1323, 1327 (9th Cir.1992) (sustaining district court's admission of redirect testimony about typical response of travelers when told about errors in customs forms because cross-examination tried to portray defendant as typical weary and confused traveler).

■ We also hold that the failure to exclude the testimony because it violated the standing order or magistrate judge's statement was not plain error. The Angelos bear the burden of proving plain error and that it "almost surely affected the outcome of the case." *Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1312 n. 4 (10th Cir.), *cert. denied,* 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986); *see also* Fed.R.Evid. 103(d) advisory committee's note (explaining that Rule 103(d), which establishes the plain error exception, is patterned after Fed.R.Crim.P. 52(b)); *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (explaining that under Fed. R.Crim.P. 52(b), the defendant bears the burden of proving prejudicial error when no proper objection was made). In civil cases, we have limited the plain error exception to "errors which seriously affect 'the fairness, integrity or public reputation of judicial proceedings.'" *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1460 (10th Cir.1987) (quoting *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1516 (10th Cir.1984), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985)); *accord McEwen,* 926 F.2d at 1545. The exception is thus "limited to exceptional cases." *Aspen Highlands Skiing Corp.,* 738 F.2d at 1516. In fact, in analogous circumstances, where there were both proper and improper purposes for proffered evidence but no offer of proof to rule out the improper purpose, we said that "the judge can do no wrong" in excluding the evidence because we will not require the trial judge to "imagine some admissible purpose." *Willie,* 941 F.2d at 1394. Here the Angelos' objection may or may not have had merit, depending on how it was understood. Absent "egregious circumstances," we will not find plain error where the trial judge only perceived the obvious meritless objection and admitted the evidence. *Id.*

The Angelos have not identified any such exceptional or egregious circumstances. They complain that the testimony and ruling surprised them, but they could have remedied the surprise by asking for a continuance. *See LeMaire v. United States,* 826 F.2d 949,

953 (10th Cir.1987) (" '[T]he remedy for coping with surprise is not to seek reversal after an unfavorable verdict, but a request for a continuance at the time the surprise occurs.' " (quoting *Szeliga v. General Motors Corp.*, 728 F.2d 566, 568 (1st Cir.1984))). Nor have they proved that the outcome almost certainly would have been different had the district court excluded the Quinidine testimony. We therefore conclude that the district court did not plainly err by failing to exclude the testimony because it violated the standing order or magistrate judge's statement.

## II. Attorney Misconduct

The Angelos next contend that appellees' counsel prejudiced them by intentionally withholding Dr. Jarolim's Quinidine testimony in order to prevent them from cross-examining her about that testimony. The Angelos therefore demand a new trial.

The Angelos did not allege attorney misconduct in a contemporaneous objection. They only raised this objection in a later motion for a new trial, which the district court denied. There are "strong policy reasons for the basic rule that timely objection is a condition precedent to review on appeal." *Ryder*, 814 F.2d at 1424 n. 25; *see also* Fed.R.Civ.P. 46. "[A] party may not wait and see whether the verdict is favorable before deciding to object." *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 69 (1st Cir.1984) (holding that failure to object to improper closing argument or to move for mistrial at trial barred considering improper closing as grounds for a new trial after jury returned its verdict). Unless the fairness of the trial is threatened, we therefore will not exercise our discretion to review a challenge not raised by a timely objection. *See Ryder*, 814 F.2d at 1424 n. 25. We see no such threat here, especially considering the Ange-

los failure to ask for a continuance to mitigate any perceived unfairness.

Even if we were to review this challenge, however, we would hold that the district court did not err. "The decision whether misconduct in a trial has been so egregious as to require retrial is largely left to the discretion of the trial court." *Polson v. Davis*, 895 F.2d 705, 711 (10th Cir.1990). We therefore will reverse only if the court clearly abused its discretion. *Id.*

A new trial may be required only if the moving party shows that it was prejudiced by the attorney misconduct. *See Massie v. Godfather's Pizza, Inc.*, 844 F.2d 1414, 1423 (10th Cir.1988); *Ryder v. City of Topeka*, 814 F.2d 1412, 1424–25 (10th Cir.1987). The jury apparently believed Dr. Jarolim despite several other challenges to her opinion, and we have no reason to think that the jury would not have believed her had the Angelos been better prepared to rebut her testimony that Quinidine explained the persistence of Nicholas's symptoms. Furthermore, a continuance could have remedied whatever prejudice may have been caused by Dr. Jarolim's testimony, yet the Angelos did not ask for a continuance. *See LeMaire*, 826 F.2d at 953. The district court therefore did not clearly abuse its discretion in finding no prejudice requiring a new trial.

## III. Deposition Testimony of Dr. Gawey

The Angelos next argue that the trial court should have admitted the deposition testimony of Nicholas Angelo's doctor, Dr. Steven Gawey. We review the trial court's refusal to admit deposition testimony for abuse of discretion.[3] *Polys v. Trans–Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir.1991); *Alfonso v. Lund*, 783 F.2d 958, 961 (10th Cir.1986).

Deposition testimony is normally inadmissible hearsay, but Fed.R.Civ.P. 32(a) creates

---

**3.** The record does not clearly reveal whether the Angelos made a proper offer of proof when moving to admit the deposition testimony. In order to rule the exclusion of evidence erroneous, we must know the substance of the evidence excluded, either through the proponent's affirmative showing or through the context in which the excluded evidence was offered. *See* Fed.R.Evid. 103(a)(2); *Polys v. Trans–Colorado Airlines, Inc.*,

941 F.2d 1404, 1406–07 (10th Cir.1991). Without an offer of proof, we will not reverse an evidentiary decision absent plain error. *Polys*, 941 F.2d at 1408. Because the record is unclear whether the Angelos made an offer of proof, the parties do not raise the issue, and it does not affect our holding, we assume that a proper offer was made.

an exception to the hearsay rules. *See Southern Indiana Broadcasting, Ltd. v. F.C.C.*, 935 F.2d 1340, 1342 (D.C.Cir.1991); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 (1st Cir.1988). Depositions may also be independently admissible under the Federal Rules of Evidence. *See* Fed.R.Civ.P. 32(a)(4) ("A deposition previously taken may also be used as permitted by the Federal Rules of Evidence."); Fed.R.Evid. 804(b)(1) (excepting certain depositions from hearsay rule where the deponent is "unavailable as a witness"). The Angelos had the burden of proving that Dr. Gawey's deposition testimony was admissible under Fed.R.Civ.P. 32(a) or Fed.R.Evid. 804. *See Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir.1990) (stating that proponent bears the burden of proving that Rule 32 permits admission of deposition testimony); *United States v. Eufracio–Torres*, 890 F.2d 266, 269 (10th Cir.1989) ("When seeking evidence of a witness who is unavailable for trial under Fed.R.Evid. 804, the proponent of the evidence bears the burden of demonstrating the unavailability of a declarant."), *cert. denied*, 494 U.S. 1008, 110 S.Ct. 1306, 108 L.Ed.2d 482 (1990).

The Angelos argue that Dr. Gawey's deposition testimony was admissible because he was unavailable to testify at trial. Rule 32 permits use of deposition testimony at trial if the proponent was "unable to procure the attendance of the witness by subpoena." Fed.R.Civ.P. 32(a)(3)(D). Rule 804 is broader, excluding depositions from the hearsay rule when the deponent "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." Fed.R.Evid. 804(a)(5).

The Angelos did subpoena Dr. Gawey, but he responded that he could not appear because his partner would be out of the office and he would be "extremely busy" during the time scheduled for his testimony. Appellants' App. at 78. The district court offered to accommodate Dr. Gawey's schedule and let him testify at a time that would be more convenient. *Id.* at 129–30. Dr. Gawey's office apparently was close to the courthouse as well. *Id.* at 128. The Angelos' counsel said he would do his best to persuade Dr.

Gawey to testify, but four days later told the court that he couldn't get Dr. Gawey to appear. *Id.* at 130, 134. The Angelos' attorney then moved to admit Dr. Gawey's deposition testimony without further explanation. The court denied the motion because Dr. Gawey's excuse was not a "sufficient basis for excusing him from subpoena." *Id.* at 134. The Angelos' attorney did not explain what efforts he made to persuade Dr. Gawey, nor did he say why Dr. Gawey could not testify on a day that Dr. Gawey's partner would not be away from their office. Although the trial judge had alluded to the court's power to place the doctor in contempt, the Angelos apparently never considered invoking this power. Given the Angelos' apparent lack of diligence in getting Dr. Gawey to appear, the district court did not abuse its discretion in ruling that the Angelos had not proved that they were unable to procure Dr. Gawey's appearance by subpoena or other reasonable means.

The Angelos also suggest that the deposition testimony was admissible under Rule 32(a)(3)(E) because there were "exceptional circumstances" justifying its use "in the interest of justice." Although the existence of "exceptional circumstances" obviously depends on the facts of the particular case,

> [h]ow exceptional the circumstances must be under Rule 32(a)(3)(E) is indicated by its companion provisions. These authorize use of a deposition in lieu of live testimony only when the witness is shown to be unavailable or unable to testify because he is dead; at a great distance; aged, ill, infirm, or imprisoned; or unprocurable through a subpoena.

*Allgeier*, 909 F.2d at 876. The Angelos do not describe any "exceptional circumstances" justifying admission of the deposition testimony other than Dr. Gawey's refusal to appear. Their inability to get their witness to appear must be considered under the specific provisions dealing with that situation, which we have already held do not justify admitting the deposition testimony. The Angelos also stress the severe prejudice they suffered, but as *Allgeier* suggests, the "exceptional circumstances" must be a reason the deponent cannot appear, not merely serious prejudice that

would result if the court did not admit the deposition testimony.[4]

## IV.  Reverse Bifurcation

The Angelos next contend that the trial court abused its discretion by ordering the issues of liability and damages to be tried in a reverse bifurcation format.  The trial court has considerable discretion in determining how a trial is to be conducted. *Blair v. Eagle–Picher Indus., Inc.*, 962 F.2d 1492, 1500 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 464, 121 L.Ed.2d 372 (1992). We therefore will not disturb the trial court's bifurcation order absent an abuse of discretion. *Easton v. City of Boulder,* 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).[5]

A court may order a separate trial of any claim or separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R.Civ.P. 42(b).  Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable. *See O'Dell v. Hercules Inc.,* 904 F.2d 1194, 1202 (8th Cir.1990).  Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party.  *See Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1152 (6th Cir.1988); *Martin v. Bell Helicopter Co.,* 85 F.R.D. 654, 658 (D.Colo.1980).

### A.  *Convenience and Economy*

"While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth."  Fed.R.Civ.P. 42(b) advisory committee's note.  Courts have often used bifurcation to deal with massive product liability litigation, especially asbestos cases.  *See, e.g., Campolongo v. Celotex Corp.,* 681 F.Supp. 261, 262 (D.N.J.1988) ("The magnitude of the [asbestos caseload] problem invites the employment of extraordi-

nary case management techniques provided they equally serve the litigants, the court and the ends of justice.").  In fact, courts have commonly used reverse bifurcation in asbestos cases.  *See, e.g., Borman v. Raymark Indus.,* 960 F.2d 327, 329 (3d Cir.1992); *In re Joint E. & S. Dists. Asbestos Litig.,* 798 F.Supp. 940, 944 (E. & S.D.N.Y.1992), *rev'd,* 995 F.2d 343 (2d Cir.1993) *and rev'd sub nom. Malcolm v. National Gypsum Co.,* 995 F.2d 346 (2d Cir.1993); *Hughes v. Owens– Corning Fiberglas Corp.,* No. 88–3374, 1991 WL 242185 (E.D.La. Nov. 5, 1991).  Reverse bifurcation obviously saves time and money by eliminating some cases after the first phase, thus avoiding trial of the defendants' liability.  When the district court issued its reverse bifurcation order, the Angelos' claim was one of more than 600 asbestos cases on the docket of the Northern District of Oklahoma.  In light of this burdensome asbestos caseload, the widespread use of bifurcation in asbestos cases, and the logical savings of time and money, the district court's reverse bifurcation format clearly is "conducive to expedition and economy."  *Cf. Blair,* 962 F.2d at 1500 (holding that limits on number of experts and time for cross-examination were not abuses of discretion in light of enormous asbestos caseload).

### B.  *Separability*

As we have already explained, bifurcation is improper if the issues are not separable.  The Angelos argue that "[t]he issues of damages and liability are so interwoven that they cannot be submitted to the jury independently, without confusion and uncertainty which would amount to denial of a fair trial."  Appellants' Br. at 28.  They do not offer concrete examples, but generally contend that the evidence and argument on the phase one issues of damages and causation would likely overlap with the phase two issues of liability and punitive damages.

---

**4.**  Because we conclude that the deposition testimony was properly excluded, we need not decide whether it was cumulative or competent.

**5.**  It is unclear whether the Angelos properly objected to the reverse bifurcation format.  *See*

Fed.R.Civ.P. 46.  We do not decide whether the Angelos raised the issue before the trial court, however, because the parties do not address the question and because we reject their contention even if they did properly object.

We conclude that the issues are clearly separable. · Although the same witnesses may testify in both phases, the issues and testimony are different. The first phase considers only whether the plaintiff has a disease that was caused by asbestos, and what damages the plaintiff suffered as a result. The evidence therefore concentrates on the plaintiff's health history, the extent of his exposure to asbestos, the possible causes of his illness, and the losses he has suffered from his illness. The second phase, on the other hand, concentrates on what warnings the defendants should have given in light of the "state of the art" and whether the products to which the plaintiff was exposed were the defendants'. Punitive damages are also decided in the second phase, because they also focus on the defendants' conduct. The only potential overlap is proving in phase one what the plaintiff was exposed to and in phase two which of those products were produced, sold, or distributed by the defendants. Even then, however, they are clearly two separate issues, although the same witnesses may sometimes testify on both. We therefore conclude that the issues were clearly separable.

## C. *Fairness*

Finally, the Angelos complain that the reverse bifurcation format was essentially unfair to them. They contend that the format allowed the appellees to take inconsistent positions, that it prevented the Angelos from fully developing Nicholas's history of exposure to asbestos, and that it is an inappropriate "judicial sanction of the Defendants' position that product identification and exposure history is not necessary to establish medical causation." *Id.* at 31. We reject each of these contentions. First, the Angelos have not pointed to any examples of "inconsistencies" in the appellees' arguments, even if a format that permitted such inconsistencies would be unfair. Second, the Angelos have not demonstrated what they were unable to fully develop about Nicholas's history of ex-

posure. In fact, the master order requires developing the complete history of general exposure in phase one. Appellants' App. at 302. If the Angelos didn't fully develop the exposure history, it was not because the reverse bifurcation format didn't permit it. Finally, we disagree that bifurcation suggests to the jury that exposure history is unnecessary to establish medical causation. Exposure history is an express part of the first phase, in which causation is also decided. On the other hand, causation does not depend on whose products the plaintiff was exposed to, so excluding product identification is not unfair.[6]

We thus conclude that the issues were separable, that efficiency and economy justified separation of the issues, and that the separation was not unfair to the Angelos. We therefore hold that the district court's reverse bifurcation format did not abuse its discretion.

## V. Jury Instructions

The Angelos' final contention is that the jury instructions were too restrictive because they referred to "mesothelioma" instead of "asbestos-related disease." They also complain that the verdict form was too general because it did not specify that Nicholas Angelo did not suffer from mesothelioma.

■■■ On review, "instructions must be read and evaluated in their entirety." *United States v. Denny*, 939 F.2d 1449, 1454 (10th Cir.1991). We will sustain the district court's instruction if it "states the governing law and provides the jury with an ample understanding of the relevant issues and the applicable law." *Street v. Parham*, 929 F.2d 537, 539 (10th Cir.1991). Furthermore, even if the instructions were erroneous, we will reverse only if the error was prejudicial in light of the entire record. *Rohrbaugh v. Owens–Corning Fiberglas Corp.*, 965 F.2d 844, 846 (10th Cir.1992); *Denny*, 939 F.2d at 1454.

The district court instructed the jury that

The court has bifurcated this case into two phases. During phase I of the trial,

---

6. The Angelos also suggest that reverse bifurcation "encourages the jury to terminate the trial at the end of the first phase and allow them to go home without hearing the entire case." Appellants' Br. at 31. The district court's order, how- ever, required different juries for each phase, and the jury instructions told the jury so. Appellants' App. at 89. This objection therefore does not apply to the reverse bifurcation format actually used by the district court.

you will determine whether or not the plaintiff has mesothelioma. If you find that he suffers from mesothelioma, it will then be your duty to determine the amount of monetary damages, if any, to which Mr. and/or Mrs. Angelo may be entitled. When you have made these determinations, phase I of the trial will be completed.

If you find in favor of the defendants, and that the plaintiff does not have mesothelioma, or is not entitled to damages, then the case will end and there will be no phase II. However, in the event you find that the plaintiff does have mesothelioma, and is entitled to monetary damages, then the case will proceed to the phase II trial.

. . . .

In regard to plaintiff Nicholas J. Angelo's claim, you will be asked to consider only two issues: (1) Does plaintiff have mesothelioma? (2) If so, what are plaintiff's damages, if any?

In order to recover against any of the defendants in this case, you are instructed that the plaintiff has the burden of proving each of the following, by a preponderance of the evidence:

(1) that the plaintiff has mesothelioma; and

(2) the nature and extent of his damages, if any.

. . . .

If you find that none of plaintiff's medical conditions resulted from exposure to asbestos, but rather from another cause, including the natural progression of any medical problems unrelated to asbestos exposure, then the plaintiff has not met the burden of proof on the issue of causation and your verdict must be in favor of defendants.

. . . .

If you find from a preponderance of the evidence and under these instructions that the plaintiff has sustained injury as a result of exposure to asbestos, then you may assess the amount of recovery for the damages which you find were so sustained by the plaintiff.

Appellants' App. at 89, 100, 102, 104.

■ The Angelos protested at trial the substitution of "mesothelioma" for "asbestos-related disease or injury." They now contend that this substitution left "the impression upon the jury that they may only award Mr. Angelo damages for those injuries which are directly caused by the mesothelioma and not other medical conditions or injuries which occur in his body as a result of the development of mesothelioma." Appellants' Br. at 34.

We disagree. The jury instructions also told the jury to determine damages if it found that Nicholas Angelo "sustained injury as a result of exposure to asbestos." Appellants' App. at 104. Furthermore, the Angelos contended from the beginning that Nicholas Angelo had asbestos-induced mesothelioma, and both sides consequently focused on mesothelioma. The court clarified and simplified the instructions by referring specifically to what the Angelos had been attempting to prove throughout the trial. Considering the instructions as a whole, we conclude that they gave the jury an adequate understanding of the relevant issues, even though they often referred specifically to mesothelioma.

We also conclude that the instructions did not prejudice the Angelos in light of the entire record. It was clear throughout that any disease caused by asbestos could support a claim for damages, but that the Angelos were mainly trying to prove Nicholas had mesothelioma. It was also clear that the Angelos were entitled to any damages resulting from the mesothelioma. The district court therefore did not abuse its discretion in giving this instruction.

We also find no error in the challenged verdict form. The form stated:

We, the jury in the above styled case, being duly impaneled and sworn, do hereby find in favor of defendants and award the plaintiffs no damages.

*Id.* at 115.

■ The Angelos contend that this verdict form should have included a specific finding that Nicholas Angelo "does not have mesothelioma." Appellants' Br. at 35. They argue that this finding was necessary be-

cause the jury in phase one was to decide only whether Nicholas Angelo has asbestos-related mesothelioma and, if so, what damages to award. *Id.* We disagree. It is beyond dispute that general verdict forms are proper, as long as the court has correctly instructed the jury. The jury instructions in this case did correctly explain the issues, as well as the bifurcation process and what the jury was to decide in phase one. Appellants' App. at 89, 100.

Furthermore, the more specific verdict form urged by the Angelos would have been erroneous itself. A verdict for the defendants in phase one did not require finding that Nicholas Angelo does not have mesothelioma. Failure to prove that asbestos *caused* the mesothelioma, for example, would also be a proper basis for a defense verdict. A verdict form requiring the jury to find that Nicholas Angelo does not have mesothelioma therefore would have been too restrictive.

For the reasons set forth above, we AFFIRM the district court's refusal to grant the Angelos a new trial, and consequently AFFIRM the order entered in favor of the appellees.