Katherine E. GRIMAN, Administratrix of the Estate of Frank J. Griman, Deceased, Plaintiff–Appellant,

v.

Florence MAKOUSKY and Lois Weaver, Defendants–Appellees.

No. 95–1734.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1995.

Decided Feb. 7, 1996.

William L. Wilson (argued), Hahn, Walz, Knepp, Dvorak, & Higgins, South Bend, IN, for Katherine E. Griman.

John D. Ulmer, Michael F. DeBoni (argued), David E. Swihart, Yoder, Ainlay, Ulmer & Buckingham, Goshen, IN, for Florence Makousky, Lois Weaver.

Before POSNER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

POSNER, Chief Judge.

The plaintiff brought suit under 42 U.S.C. § 1983 and Indiana's wrongful-death statute. She received a small judgment under the latter statute but her principal claim, the 1983 claim, was dismissed because the judge would not let her introduce in evidence the deposition of a crucial witness, and she appeals.

The plaintiff's decedent, Griman, had died while an inmate of a county jail. The claim that was dismissed charged that his death had been due to deliberate indifference to his medical needs on the part of the defendants, employees of the jail. The plaintiff's key witness was a fellow inmate of Griman's named Hunt. The plaintiff's lawyer took Hunt's deposition in June of 1993, at which time Hunt was still an inmate of the jail. In his deposition Hunt said that he had told a nurse (one of the defendants), only hours before Griman died, that Griman was ill and needed medication. This evidence was essential to prove deliberate indifference, a sine qua non of liability.

Pursuant to an order by the district court that tracked the new Fed.R.Civ.P. 26(a)(1) ("Initial Disclosures"), the defendants had listed Hunt as an individual likely to have information bearing significantly on the claims or defenses in the case. The order required the defendants to give not only the individual's name but also, "if known, [his] address or telephone number." The defendants gave Hunt's address as the jail and his phone number as the jail's phone number. The order also required each party "seasonably to supplement its [initial] disclosure ... to include information thereafter acquired, if the party learns that the information disclosed is not complete and correct." Cf. Fed.R.Civ.P. 26(e)(1). On April 29, 1994, the defendants supplemented their initial disclosures with a new list. The new list included Hunt among "inmates incarcerated at the Elkhart County Jail," again giving the jail's address and phone number, and added: "Last known address is the Elkhart County Jail, unless noted otherwise below." There was no such note next to Hunt's name. Yet Hunt had been released from the jail on January 1, 1994. Whether any of the defendants who remain in the case, or their lawyers, knew this (the Sheriff's department, which operates the jail, and was in April 1994 a defendant and was represented by the same lawyers who represent the individual defendants, knew), and whether Hunt was

released unconditionally because he had served his time, or was merely released on bond, we do not know. Whether the knowledge of the Sheriff's department should be imputed to its lawyers and then to the remaining defendants because they have the same lawyers, we need not decide. Under Rule 26(e), the duty of supplementation "applies whether the corrective information is learned by the client or by the attorney." Committee Note to 1993 Amendment to Rule 26 Subdivision (e). But here it was learned by a different client. We know one thing: the plaintiff's counsel, having had no contact with Hunt since he had been deposed back in June of 1993, was unaware that he had been released.

The trial began on June 6, 1994. On the second day the plaintiff's counsel handed the defendants' counsel a sheaf of subpoenas for persons, including employees of the Sheriff's department and inmates of the jail, whom the plaintiff's counsel wanted to call as witnesses. One of the subpoenas was for Hunt. When informed that he was no longer in the jail, the plaintiff's counsel began frantic efforts to find him. At his deposition Hunt had given the address in South Bend to which he expected to return when he was released, and it was there—his grandmother's house—that the search began. Hunt was not at his grandmother's house, and she did not know where he was though she thought he might be on the way back from Memphis. She had his beeper number, but he did not respond. Unable to find Hunt despite strenuous efforts, the plaintiff's counsel moved to be allowed to introduce Hunt's deposition in evidence in lieu of his testifying in person. The judge denied the motion.

■ Rule 32 of the Federal Rules of Civil Procedure provides that the deposition of a witness may be used at trial for any purpose if, so far as bears on this case, the witness is more than 100 miles from the place of trial (Fed.R.Civ.P. 32(a)(3)(B)), or "the party offering the deposition has been unable to procure the attendance of the witness by subpoena" (subsection (D)), or "such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimo-

ny of witnesses orally in open court, to allow the deposition to be used" (subsection (E)). Since Memphis is more than 100 miles from South Bend, subsection B provided a possible basis for the admission of Hunt's deposition. The plaintiff's counsel mentioned subsection (B) to the district judge but did not pursue the matter and has not raised it on appeal, so it is waived.

■ Let us jump to subsection (E). Given the strong preference of Anglo–American courts for live testimony, especially in a case that turns on the credibility of testimony contradicted by other witnesses, *Loinaz v. EG & G, Inc.*, 910 F.2d 1, 8 (1st Cir.1990), we cannot say that the judge abused his discretion in concluding that no "exceptional circumstances" warranted the admission of Hunt's deposition into evidence. It is true that the defendants' lawyers had and took the opportunity to cross-examine Hunt at his deposition and that even if they had not done so the deposition would have been admissible had Hunt died. Fed.R.Civ. 32(a)(3)(A); *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1504–06 (11th Cir.1985). But a jury would not find it easy to determine Hunt's credibility without hearing him testify under direct and cross-examination.

■ Even "serious prejudice" from the exclusion of a deposition has been held not to be an exceptional circumstance in and of itself. *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 963–64 (10th Cir. 1993); see also *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir.1990). The other subsections of Rule 32(a)(3) make clear that it is not only a party's need for the evidence in the deposition, but also the nature of the circumstances that have made the deponent unavailable to testify, that determines whether the circumstances can be thought exceptional. Indeed, if harm were all that mattered, there would be no need for any of the other subsections. Even in *Huff v. Marine Tank Testing Corp.*, 631 F.2d 1140, 1142–43 (4th Cir.1980), the case that goes furthest in interpreting "exceptional circumstances" in Rule 32(a)(3)(E) liberally, the unexpected disappearance of the key witnesses was an exceptional, and in the circumstances exceptionally harmful, event not equaled by any-

thing here. (The case fell under (E) rather than (D) because counsel, wholly and reasonably confident that the witnesses would appear because they had a monetary stake in the case and because opposing counsel had assured him they would appear, had not tried to subpoena them.) The release and subsequent disappearance of a jail inmate are not an exceptional combination of events.

That leaves subsection (D), on which the plaintiff's counsel places the weight of his argument. He argues that the defendants misled him into thinking that Hunt was still in jail and as a result made it impossible for him to procure his attendance by subpoena. So the judge might indeed have found; the question is whether he was obliged to find it, that is, whether he acted unreasonably ("abused his discretion") in not finding it. For a party to be "unable" to procure a witness's attendance at trial by subpoena implies that the party used reasonable diligence to get him to attend, *Rascon v. Hardiman*, 803 F.2d 269, 277 (7th Cir.1986); *Angelo v. Armstrong World Industries, Inc.*, supra, 11 F.3d at 963; *Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir.1987), and it is up to the district judge, within broad limits, to decide whether, in the circumstances, this condition has been satisfied. *Rascon v. Hardiman*, supra, 803 F.2d at 277; *Oostendorp v. Khanna*, 937 F.2d 1177, 1179 (7th Cir.1991). We do not think it was impermissible for the district judge to conclude that the plaintiff's counsel had not used reasonable diligence. Jails as distinct from prisons are meant for persons who are awaiting trial or serving short sentences; in either case their confinement in the jail ordinarily is temporary. Of course if the next stop is prison the shortness of their stay in jail is not an impediment to finding them. But so far as appears the plaintiff's counsel made no effort to ascertain Hunt's likely release date or to find out whether he would be released into the community or merely transferred to another institution. Counsel did know that Hunt was scheduled to stand trial on August 24, 1993. This created a possibility, at least, that his release was imminent. It was not reasonable to assume that if Hunt was in the Elkhart County Jail in June of 1993 he would be there a year later, or that, if he was released,

the defendants (even if acting in complete good faith, as the plaintiff's counsel was entitled to assume they were) would inform the plaintiff's counsel of the fact in time for counsel to hunt him down. Under Rule 26(e), and presumably therefore under the judge's order, "supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Committee Note, *supra*. Hunt, held in jail on charges of dealing in illegal drugs, and having no home of his own but only his grandmother's house to give as an address, could not be assumed to be easy to find once he was released from jail.

No doubt if on January 1 or April 29 the defendants had informed the plaintiff's lawyer that Hunt had been released, the lawyer would have made an effort to find him and we may assume for purposes of argument that the effort would have been crowned with success. But we do not even know whether the defendants knew that Hunt had been released; the plaintiff's counsel made no effort to show that they had known or should have known. Recordkeeping in the criminal justice system and communication among its components often are poor, and we have already seen that it would be unreasonable to assume instant communication of the news of Hunt's release to the trial team in Griman's case. Even if the plaintiff's counsel was, as he no doubt was, lulled into believing on April 29 that Hunt was still in jail on or shortly before that day, this was no reason for him to assume that Hunt would still be there in June. The plaintiff's counsel acknowledged at the argument that the expense of issuing and serving subpoenas is trivial, giving point to the advice that "in the case of witnesses, an irreducible ritual should be followed: the witness must be subpoenaed." 1 James W. Jeans, Sr., *Litigation* § 5.04–1 (2d ed. 1992). Counsel had no excuse to wait until the second day of trial to attempt to serve the subpoena on Hunt. The need to keep in touch with one's witnesses before trial is elementary, Thomas A. Mauet, *Fundamentals of Trial Techniques* 393 (3d ed. 1992), and takes on added importance

when your key witness is a jail inmate charged with a drug offense.

We are given some pause by the district judge's having said (twice) that it would be an abuse of his discretion to grant the motion to permit Hunt's deposition to be used as evidence. Read literally that is a denial of the possession of discretion rather than an exercise of discretion. But Judge Miller is an able and experienced district judge, and we do not think these slips of the tongue should be taken as demonstrating that he failed to make a discretionary judgment. He also said that "the interest of justice would favor the use of the Hunt deposition"; but "interest of justice" is not the test, so his refusal to allow the use of the deposition on this basis cannot be faulted. More to the point, he said "I am not persuaded that that sort of diligence that has been shown in the last day [when the plaintiff's counsel was making frantic efforts to locate Hunt] would not have been productive had it been attempted earlier." The plaintiff's counsel had not done as much as he could and should have done to ensure the presence of his key witness at trial. He had disabled himself from procuring the witness's presence by subpoena. Having due regard to the prejudice to the defendants from not being able to confront at trial the principal witness against them, the judge was not required to forgive the lawyer's default.

AFFIRMED.