# IN THE COURT OF APPEALS OF IOWA

No. 19-2051
Filed October 7, 2020


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHASE WILSON,**
    Defendant-Appellant.
_____


    Appeal from the Iowa District Court for Floyd County, Peter B. Newell, District Associate Judge.


    Chase Wilson appeals his conviction for assault with intent to commit sexual abuse. **AFFIRMED.**


    Judith O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, Charles City, for appellant.

    Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.


    Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Based on the evidence submitted at trial, the jury could have concluded the following. In the summer of 2018, after finishing high school, Chase Wilson attended a movie with his family. He sat with friends rather than with his family. M.N. attended the same movie with her family. M.N. was 15 years old at the time. She was a student at the same high school Wilson had attended and knew Wilson from school. Having been "shushed" by her sister right before the movie started, M.N. changed seats to sit by herself. Shortly after changing seats, Wilson sat down beside her in spite of her saying "no" when Wilson asked if he could sit by her. After sitting next to her, Wilson repeatedly put his hand down M.N.'s shorts, one time putting his hand by her vagina over her underwear and another time putting his hand on her vagina under her underwear. M.N. repeatedly pushed Wilson's hand away and told him no. Wilson did not stop when told "no," and, at one point, told M.N. that she "had no say in it."

These events led to Wilson being charged with assault with intent to commit sexual abuse in violation of Iowa Code section 709.11(3) (2018). Following a jury trial, Wilson was found guilty of the offense. He appeals, claiming multiple errors, including various forms of ineffective assistance of counsel.

## I. Ineffective-Assistance-of-Counsel Claims.

Before proceeding to the merits of the claimed errors of the district court, we will first address Wilson's claims of ineffective assistance of counsel. In 2019, the legislature amended Iowa Code section 814.7 to require defendants to raise ineffective-assistance-of-counsel claims exclusively through postconviction-relief proceedings and to prohibit defendants from raising such claims on direct appeal.

2019 Iowa Acts ch. 140, § 31.[1]  The amendments took effect July 1, 2019, and did not apply retroactively to appeals pending on July 1, 2019.  *State v. Ross*, 941 N.W.2d 341, 345 (Iowa 2020) (holding we have jurisdiction to hear ineffective-assistance-of-counsel claims on direct appeal only "if the appeal was already pending on July 1, 2019").

In this case, the trial, guilty verdict, sentencing, and filing of notice of appeal all occurred after July 1, 2019.  Therefore, this appeal is governed by the amended version of Iowa Code section 814.7, which deprives us of jurisdiction to hear ineffective-assistance-of-counsel claims.   Although the State did not raise this issue, "[j]urisdiction is a matter that can be raised at any stage of the proceedings and will be claimed by the court on its own motion when appropriate.  When we determine we are without jurisdiction, an appeal must be dismissed even though neither party has moved for it."  *Recker v. Gustafson*, 271 N.W.2d 738, 739 (Iowa 1978); *see also In re M.T.*, 714 N.W.2d 278, 281 (Iowa 2006) ("Questions concerning this court's jurisdiction may be raised upon the court's own motion.").  On our own motion, we find we do not have jurisdiction to address Wilson's ineffective-assistance-of-counsel claims on this direct appeal.

**II.    Claimed Errors of the District Court.**

We will address separately each of Wilson's claims of error.

---

[1] After amendment, Iowa Code section 814.7 currently reads as follows (with emphasis added):
> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822.  The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and *the claim shall not be decided on direct appeal from the criminal proceedings*.

### A.     Admission of Interview of Wilson—*Miranda* Issues

Prior to trial, Wilson moved to suppress statements he made to law enforcement during an interview, arguing the statements were inadmissible because law enforcement failed to give *Miranda* warnings, in violation of his Fifth Amendment rights.   *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (requiring various warnings to be given when a subject is in custody and interrogated).   Following a hearing, the district court denied Wilson's motion, concluding the interview was not custodial.

#### 1.     Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo."  *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017). "When we review a record de novo, we make 'an independent evaluation of the totality of the circumstances as shown by the entire record.'"  *Id.* (quoting *In re Prop. Seized from Pardee*, 872 N.W.2d 384, 390 (Iowa 2015)).   "On factual matters, we give deference to the trial court, but we are not bound by its findings." *State v. Green*, 896 N.W.2d 770, 775 (Iowa 2017).

#### 2.     Merits

An individual's rights under *Miranda* are triggered when law enforcement interrogates an individual in a custodial setting.  *Miranda*, 384 U.S. at 444–45; *State v. Kasel*, 488 N.W.2d 706, 708 (Iowa 1992).  An interrogation is "custodial" where the individual "has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda*, 384 U.S. at 444.  The custody inquiry is a two-part objective inquiry:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

*State v. Pearson*, 804 N.W.2d 260, 268 (Iowa 2011) (quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011)). "Relevant factors for determining custody include: 'the language used to summon the individual[;] the purpose, place and manner of the interrogation[;] the extent to which [he] is confronted with evidence of his guilt[;] and whether [he] is free to leave the place of questioning.'" *Id.* (quoting *State v. Deases*, 518 N.W.2d 784, 789 (Iowa 1994)) (alterations in original).

Wilson's mother brought Wilson to the police station at law enforcement's request. Wilson was brought alone into a room in the police station where the entire interview was video recorded. The video recording shows a police officer bringing Wilson into a well-lit room and being directed to sit at the end of a table with the door behind Wilson with nothing blocking Wilson's path to the exit door. Wilson appears to be at ease. The door to the room is left partially open throughout the entire interview. The officer sits a considerable distance away from Wilson at the side of the table. The officer explains to Wilson that Wilson is free to leave whenever he wants and tells him the path back out of the building. He then tells Wilson that Wilson does not have to answer any questions he does not want to and that he is not under arrest. After being told he is free to leave, Wilson asks the officer "And you're not going to stop me?" to which the officer responds that Wilson is "free to leave whenever." About twenty minutes into the interview, the

officer asks Wilson to write a statement about the events. The officer then leaves Wilson alone to work on the statement. The officer returns about five minutes later as Wilson finishes writing the statement.

In support of his claim he was in custody, Wilson argues he is "mentally slow," "deficient in the areas of English comprehension," and should not be treated as a "fully functioning adult." Additionally, his mother was not permitted to go into the interview room with him. Wilson argues these details made the circumstances a "custodial" interrogation. We disagree. There was evidence presented at the pretrial suppression hearing that Wilson has attention deficit hyperactivity disorder, has slight autism, is immature for his age, and was in special-education classes when in high school. However, evidence was also presented that he was nineteen years old, had graduated high school with a 2.457 cumulative grade-point average, did work on an as-needed basis with an employer, and had an IQ in the "average range." Furthermore, there is no evidence Wilson, as opposed to his mother, asked that his mother be permitted to attend the interview. We take these factors into account as part of the totality of the circumstances in determining whether Wilson was in custody.

Considering the factors above and the evidence on the record, we conclude the district court correctly held Wilson's interview at the police station was not custodial. Wilson was repeatedly told that he was not under any obligation to answer questions or to stay in the room and that he was free to leave whenever he wanted to. The officer adopted a friendly, non-accusatory demeanor with Wilson, and the officer did not confront Wilson with any accusations of Wilson having committed a crime. Under circumstances such as these, we are convinced

Wilson was not deprived of his freedom of action in any significant way sufficient to make the interview custodial.  *See Miranda*, 384 U.S. at 444.

**B.      Admission of Interview of Wilson—Voluntariness**

Wilson also argues that, notwithstanding the *Miranda* analysis, statements he made during the police interview were made involuntarily.

*1.      Standard of Review*

We review the district court's voluntariness determination de novo.  *State v. Madsen*, 813 N.W.2d 714, 722 (Iowa 2012).

*2.      Merits*

> The State bears the burden of proving by a preponderance of evidence that an accused's confession is voluntary.  The ultimate test in making this determination is whether, under the totality of the circumstances, the statements were the product of an essentially free and unconstrained choice, made by the subject at a time when that person's will was not overborne or the capacity for self-determination critically impaired.

*State v. Bowers*, 661 N.W.2d 536, 540–41 (Iowa 2003).  We assess whether statements were made voluntarily by considering a number of factors, including

> [the] defendant's age; whether defendant had prior experience in the criminal justice system; . . . whether deception was used; whether defendant showed an ability to understand the questions and respond; the length of time defendant was detained and interrogated; defendant's physical and emotional reaction to interrogation; whether physical punishment, including deprivation of food and sleep, was used.

*Madsen*, 813 N.W.2d at 722–23 (omission in original) (quoting *State v. Payton*, 481 N.W.2d 325, 328–29 (Iowa 1992)).

We begin discussion on this issue by noting it is a stretch to call Wilson's statement a confession, as he said little, if anything, of an incriminating nature. Wilson concedes the statements made in the interview were not incriminating.

Nonetheless, Wilson argues his statements were involuntary because he is a person with lower than average intelligence, and, because of his disability, his statements seemed "excessively cavalier" because Wilson did not understand what was being asked of him or why he was being questioned.

While a defendant's mental impairment is a factor in considering whether statements are voluntary, mental impairment alone is insufficient to "prevent stat[e]ments from being voluntary unless it is sufficient to deprive the person involved of capacity to understand their meaning and effect." *State v. Connor*, 241 N.W.2d 447, 454 (Iowa 1976). We are not convinced Wilson's mental impairment was such that he did not have the capacity to understand the meaning and effect of the statements he made. As previously noted, Wilson graduated high school, has some employment, and has been determined to have an IQ within the "average" range. No evidence was presented that Wilson has been subject to a guardianship, conservatorship, or mental-health committal proceedings, nor was any evidence presented that his competency to stand trial was questioned. Furthermore, Wilson's answers during the interview demonstrated that he understood the questions he was asked and gave responsive answers.

The factors articulated above support a finding that Wilson's statements were given voluntarily. As noted in the previous section, the video recording of the interview shows the interview was conducted in a non-confrontational and non-accusatory manner. It further shows the interview was relatively short—under thirty minutes—and the officer did not use punishment, deception, or other coercive tactics to trick Wilson into incriminating himself. Finally, Wilson was nineteen years old at the time of the interview and had some prior experience being

questioned by law enforcement. Based on these facts, we conclude the State met its burden to show Wilson's statements were given voluntarily.

### C.        Refusal to Admit Testimony by Deposition

Wilson took a deposition of a witness, D.B., by telephone the day before trial. Rather than calling D.B. as a witness, Wilson sought to present his testimony by introducing a transcript of his deposition pursuant to Iowa Rule of Evidence 5.804(b)(1), claiming D.B. was unavailable pursuant to Iowa Rule of Evidence 5.804(a)(5). The district court refused admission of the transcript, finding Wilson failed to meet his burden to show D.B. was unavailable.

#### 1.        Standard of Review

We review hearsay claims for correction of errors at law. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). "This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence." *Id.*

#### 2.        Merits

Wilson sought to introduce D.B.'s deposition testimony that M.N. told D.B. that the rumors about Wilson sexually assaulting M.N. were not true. In order to admit the deposition testimony pursuant to the former-testimony exception in rule 5.804(b)(1), D.B. would have to be unavailable as that term is defined by rule 5.804(a)(5). It was Wilson's burden to establish D.B.'s unavailability. *See* 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5:804:0 (November 2019 Update); *State v. Traywick*, 468 N.W.2d 452, 454 (Iowa 1991); *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 963 (10th Cir. 1993); *Weisman v. Alleco, Inc.*, 925

F.2d 77, 79 (4th Cir. 1991). The district court found Wilson failed to meet this burden, and we agree.

First, we note Wilson presented little evidence of D.B.'s unavailability, choosing instead to rely primarily on counsel's statements. This is insufficient. *See State v. Ray*, 516 N.W.2d 863, 866 (Iowa 1994) (finding "perfunctory" attempts to secure attendance insufficient and noting "'unavailability' requires more than a mere showing that a subpoena has been issued and returned unserved"); *State v. Zaehringer*, 325 N.W.2d 754, 759 (Iowa 1982) (finding proponent failed to meet burden to show unavailability when the proponent relied on unsubstantiated arguments and statements of counsel rather than evidence).

Second, even counsel's statements did not show unavailability. Such statements show defense counsel knew D.B., a minor, was in an out-of-home placement pursuant to child-in-need-of-assistance (CINA) proceedings. Defense counsel knew where that placement was, as evidenced by the fact defense counsel tracked D.B. down to take his telephone deposition the day before trial. Armed with this knowledge, the extent of the effort made to secure D.B.'s presence was to call D.B.s mother (who refused to authorize D.B. to leave his placement even with an offer of transportation) and the placement facility (staff members of which stated D.B. could not leave). Defense counsel did not inform the State before the deposition that Wilson intended to use the deposition at trial,[2] ask the

---

[2] This detail also calls into question whether Wilson could meet the requirement of rule 5.804(b)(1)(B), which permits the former-testimony exception relied upon by Wilson to be utilized only if the opposing party had "a similar motive" to develop D.B.'s testimony by "direct, cross-, or redirect examination."

State for assistance in securing D.B.'s attendance,[3] ask the district court or the juvenile court for assistance in requiring D.B.'s attendance, or ask for a continuance in light of the fact D.B.'s mother had been served with a subpoena on his behalf but refused to cooperate in securing D.B.'s attendance. Under these circumstances, we agree with the district court's determination that Wilson failed to meet his burden of establishing unavailability, so there was no error in refusing to admit D.B.'s deposition testimony in lieu of his live testimony.

**D.     Refusal to Admit Evidence—Interview & Snapchat**

Wilson attempted to question Wilson's mother about two topics: (1) her attempt to accompany Wilson to his interview with police; and (2) her attempt to obtain information about M.N.'s Snapchat[4] account. The district court sustained the State's relevance objections to both lines of questioning.

*1.     Standard of Review*

"We review decisions to admit or exclude evidence for an abuse of discretion." *State v. Heard*, 934 N.W.2d 433, 439 (Iowa 2019). "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Wilson*, 878 N.W.2d 203, 210–11 (Iowa 2016).

---

[3] The county attorney prosecuting the case against Wilson was familiar with D.B. and D.B.'s situation because she had been involved in D.B.'s CINA proceeding. The county attorney may have been able to assist in securing D.B.'s attendance, in part, because the county attorney knew D.B. engaged in home visits.

[4] Snapchat is "the proprietary name of an image messaging service and application, through which users can share images that may be private and temporary or public and stored for retrieval." *Snapchat*, Dictionary.com, https://www.dictionary.com/browse/snapchat?s=t (last visited Sept. 18, 2020).

### 2.     Error Preservation

We are hampered in our review of the exclusion of these items of offered evidence due to Wilson's failure to make an offer of proof.  We require offers of proof to preserve error when evidence is excluded.  *State v. Lange*, 531 N.W.2d 108, 114 (Iowa 1995).  We will not consider error preserved without an offer of proof unless the whole record makes apparent what is sought to be proven.  *Id.* Here, based on our review of the record, the only thing apparently sought to be proven is the mother was told she could not accompany Wilson to his interview with the police and she asked for access to M.N.'s Snapchat account.  We will address this issue on those limited bases.  Any other bases urged by Wilson in his brief, including any constitutional challenges or claimed discovery shortcomings, will not be considered as they are not apparent from the record and were not preserved for our review.

### 3.     Merits

Relevance is determined by whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Putnam*, 848 N.W.2d 1, 9 (Iowa 2014) (quoting Iowa R. Evid. 5.401).  Generally, the "test of relevance is 'whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [the person] knew of the proffered evidence.'" *Id.* (alterations in original) (quoting *State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004)).

As to the proffered evidence that Wilson's mother was not allowed to accompany Wilson to his police interview, Wilson was an adult at the time of the

interview, so he was not legally entitled to have a parent with him. *See In re J.A.N.*, 346 N.W.2d 495, 499 (Iowa 1984) ("The legislature has demanded that painstaking care must be taken to obtain parental consent *before questioning a juvenile*." (emphasis added)). Additionally, evidence was admitted regarding any mental limitations Wilson may have had. Under these circumstances, we find no abuse of discretion in the district court's determination that whether Wilson's mother was or was not permitted to accompany him during his police interview was not relevant because that information would not make any consequential fact more or less probable.

Likewise, whether Wilson's mother did or did not request information regarding M.N.'s Snapchat account would not make any consequential fact more or less probable. Therefore, the district court did not abuse its discretion in refusing to admit such evidence.

### E. Admission of Portions of Forensic Interviewer Testimony

The State called the forensic interviewer who interviewed M.N. Wilson made relevance objections to several questions the State asked, all of which were overruled, including the State's question regarding (1) how soon after an assault a child typically reports it; (2) how a child typically remembers the assault; (3) whether a child would ever report a sexual assault that occurred when other people were present; (4) whether the forensic interviewer had ever worked on a case where the child had denied that the assault occurred when the assault had in fact occurred; and (5) why a sexual assault victim might deny the assault happened.

### 1.    Standard of Review

We review evidentiary rulings for abuse of discretion.  *State v. Walker*, 935 N.W.2d 874, 877 (Iowa 2019).  "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'"  *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017)).  "Even if a trial court has abused its discretion, prejudice must be shown before we will reverse."  *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

### 2.    Merits

Wilson argues the question about delays in reporting was irrelevant because, in this case, there was no delay, as M.N. first divulged the incident the next day and the forensic interview was conducted the day after that.  This argument ignores the fact defense counsel raised M.N.'s delay in disclosing the assault in the cross-examination of M.N.  Furthermore, during closing argument, defense counsel commented on the fact M.N. did not immediately disclose the assault to her sister or others during the movie or as she left the movie theater.  These efforts on cross-examination and during closing argument were an apparent attempt to undermine M.N.'s credibility by suggesting the assault did not happen or M.N. would have told others immediately afterward.  While these were certainly acceptable trial tactics, Wilson cannot employ the tactics and then claim the evidence regarding delays in reporting was irrelevant.  The district court did not abuse its discretion by overruling Wilson's relevance objection to this question.

As for the remaining four evidentiary rulings Wilson raises on appeal, we first note that expert witnesses are allowed to generally testify about common behavior exhibited by child victims of sexual assault.  *See State v. Juste*, 939

N.W.2d 664, 673 (Iowa 2019); *State v. Dudley*, 856 N.W.2d 668, 676–77 (Iowa 2014) (prohibiting comment on the credibility of an alleged victim of sex abuse, but allowing testimony regarding "typical symptoms" and about victims of sexual abuse in general). Here, no objection was raised at trial on the grounds of improper vouching, and Wilson does not claim improper vouching on appeal. Instead, the objection is relevance. We find no abuse of the district court's discretion in admitting the challenged evidence as being relevant to assist the jury in making a determination whether the assault occurred as alleged.

Furthermore, to the extent Wilson argues the challenged evidence is irrelevant because the circumstances about which the forensic interviewer testified were not present in this case, even if the district court had abused its discretion in admitting the evidence, any claimed error was harmless and does not provide a basis for relief on appeal. *See State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008) ("[E]rror in an evidentiary ruling that is harmless may not be a basis for relief on appeal."). Regarding the challenged evidence, the forensic interviewer's answers provided only general observations about the behavior of child victims of sexual assault and the circumstances under which sexual assaults may occur. Wilson claims the testimony was not shown to relate to M.N., so was therefore irrelevant. Even if this is true, it was of no harm to Wilson, as a jury was not likely to be improperly persuaded by testimony about circumstances that were not shown to exist. In view of the other evidence in the record, including testimony from multiple witnesses, screenshots of conversations between Wilson and M.N., and the video recording of the police interview, we do not believe Wilson has been either "injuriously affected" or "suffered a miscarriage of justice" by the statements'

admission.  *See id.* ("When a nonconstitutional error is claimed, as in this case, the test is whether the rights of the objecting party have been 'injuriously affected by the error' or whether the party has 'suffered a miscarriage of justice.'") (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004))).

   **AFFIRMED.**